EDWARD S. STIMPSON & others, trustees, *vs.* WELLINGTON SERVICE CORPORATION
(and two companion cases [1]).

Middlesex.   March 5, 1969. — April 15, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Violation of law, Motor vehicle, Use of way. *Proximate Cause. Way,* Public: heavy vehicle, water pipe. *Evidence,* Opinion: expert.

A violation of G. L. c. 85, § 30, by operating and maneuvering back and forth a large, heavy tractor-trailer carrying a heavy piece of machinery on a public way in a city without a permit from the one having charge

---

[1] The plaintiffs in the two other cases against the same defendant were respectively Interchemical Corporation and Phelps-Dodge Copper Products Corporation.

of the way, and a violation of an ordinance of the city prohibiting driving a vehicle "in such condition or so constructed or so loaded as to be likely to cause . . . injury to . . . property," could properly be found to be proximate causes of a break in an elbow between a horizontal section and a vertical section of a water pipe inside a building adjacent to the way due to great pressure on the street under the tractor-trailer forcing a downward motion of the pipe there and a corresponding upward motion of the horizontal section of the pipe inside the building, although the break did not occur for some hours after such use of the street by the tractor-trailer [689–690]; but driving the tractor-trailer onto a sidewalk on the way in violation of an ordinance of the city was not a proximate cause of the break [690–691].

A finding was warranted that there was negligence in operating and maneuvering a large, heavy tractor-trailer carrying a heavy piece of machinery on a city street without a permit under G. L. c. 85, § 30, and in violation of an ordinance of the city, thereby creating great pressure on the street under the tractor-trailer and forcing a downward motion of a water pipe in the street there and a corresponding upward motion of a horizontal section of the pipe inside an adjacent building, which brought about a break in an elbow of the pipe connecting such section of the pipe with a vertical section. [691]

In an action for damage resulting from a break in a water pipe inside a building, certain expert testimony to the effect that the break was caused by operating and maneuvering a large, heavy tractor-trailer carrying a heavy piece of machinery on a street adjacent to the building was admissible. [691]

THREE ACTIONS OF TORT. Writs in the Superior Court dated May 27, 1964.

The actions were tried before Ponte, J.

George F. Hurley for the plaintiffs.

Raymond J. Kenney, Jr., for the defendant.

WHITTEMORE, J. In three actions of tort, consolidated for trial, after the jury had returned verdicts for the plaintiffs (whom we refer to respectively as Stimpson, Interchemical and Phelps-Dodge) the judge reserved leave to enter verdicts for the defendant and reported to this court two issues of law in each case: 1. Were the alleged violations of law a condition or a proximate cause of the damage? 2. Were the verdicts supported by proof of negligence or founded on conjecture and speculation?

With the report we have the transcript of the evidence before the jury and an auditor's report. In 1962 Stimpson owned and occupied part of a building at 175 Albany Street,

Cambridge, in which Interchemical and Phelps-Dodge were tenants. Sometime after 4:30 or 5 P.M. on July 10, 1962, water began to flow from a break in a cast iron water pipe just inside the Albany Street basement wall of the Stimpson building. When discovered about 6 A.M. on July 12, the water had reached a depth of from four and one half to five feet. The plaintiffs, seeking to recover for the resultant damage to their property, assert that the evidence warranted the conclusion that the break had been caused by the defendant in driving on Albany Street on July 10 and maneuvering and unloading there a tractor-trailer rig with an overall length of eighty-five feet, weighing, with the eighty-five ton flywheel which was the rig's cargo, about 137 tons. The flywheel was carried on a trailer about fifty feet long and twelve feet wide. This had sixteen wheels in two rows of eight each at the rear. At its front end was a gooseneck which fitted into a wheel on a dolly placed between the trailer and the tractor. The dolly moved on four wheels.

After the water had been pumped from the basement the break was discovered. It was a complete fracture of the cast iron elbow by means of which a six inch horizontal pipe that came from the water main in the street through the basement wall was connected with the six inch cast iron pipe that extended from the elbow vertically along the inner face of the wall to carry water to the building's sprinkler system. The elbow had been joined to the horizontal pipe by bolts extending through a flange on the elbow and through a matching flange on the horizontal pipe. The vertical pipe was screwed into the upper face of the elbow. According to photographs, the fracture left much of the elbow screwed in place on the vertical riser, but some of the elbow, including the flange, remained in place on the horizontal pipe. This part of the elbow was raised somewhat above and out of line with the part that remained joined to the riser. According to photographs the disalignment measured about the space occupied by six threads on the inside of the top of the elbow.

The horizontal connecting pipe in Albany Street was from four and one half to five feet below the street surface. The length of the pipe from the city water main to the face of the building was forty feet. There was evidence that, consistently with the upward pitch of this pipe inside the wall, after the break it had a downward pitch for a distance outside the building. There was evidence that to realign the pipes and put in a new elbow it was necessary to excavate the connecting pipe in Albany Street, chip away the foundation wall underneath that pipe as it entered the building and vibrate the pipe downward about an inch.

The jury could have found that the rig with its burden was in Albany Street from 8 A.M. to 12 noon on July 10, 1962, in the section of the street and on the adjacent sidewalk under which lay the horizontal connecting pipe. The rig was moved back and forth in this area in the course of efforts to move the trailer, with the flywheel, into the yard of the National Magnet Laboratory across the street from the Stimpson building.

At one time one end of the trailer, which had been temporarily disengaged from the rig and was resting on planks with a cross-section of ten inches by ten inches, in the course of reëngagement, was moved forward off the planks and fell a foot or two onto wooden blocks eight by eight inches in cross-section with a "heavy, dull thud" splintering the blocks. The jury could have found that whatever underlay the surface of the street where the rig stood and was moved, and where the end of the trailer fell, was subjected to great pressures. There were two covers for water gate shutoff boxes visible in Albany Street.

The plaintiffs offered and the judge excluded, subject to exception, the testimony of an expert engineer who was ruled competent by the judge. The offer of proof made in a voir dire in the presence of the expert (and as to parts of which the judge examined the expert) tended to show that compression of the unstable subsoil of the street would bend downward the connecting pipe, causing it to pivot on the foundation wall and that the suspension and supports of

the riser inside the basement and its connecting pipes were such that the riser could not move with the end of the horizontal pipe to which it was connected through the elbow so that the pipes were put under severe strain.

General Laws c. 85, § 30, provides "no vehicle shall travel or object be moved, on any public way . . . which weighs more than fourteen tons . . . without a permit from the board or officer having charge of such way . . . provided, that no such permit shall be required for the operation of a vehicle having three axles . . . which does not weigh more than twenty tons. . . . Any person driving, operating or moving a vehicle or object in violation of this section or of any regulation adopted hereunder, or the owner thereof, shall be liable in tort to the body politic or corporate having charge of the way for any injury to the way thereby caused. All the aforesaid limitations as to weight shall be inclusive of the load."

The defendant obtained under this statute a permit from the Department of Public Works to move the rig over specific highways from Framingham to Cambridge. The defendant obtained no permit from "the board or officer having charge" of the ways in Cambridge.

Two sections of the General Ordinances of the City of Cambridge were in evidence: c. 28, art. 8, § 25 (a) "No person shall drive or conduct any vehicle in such condition or so constructed or so loaded as to be likely to cause delay in traffic or accident or injury to man, beast or property." Chapter 33, § 43, ". . . [N]o person shall drive, ride, wheel or draw any vehicle across a sidewalk except on a driveway designated for the purpose of passage of vehicles . . . ."

1. The violation of G. L. c. 85, § 30, could be found to be a proximate cause of the breaking of the elbow. Undoubtedly the primary purpose of the statute was to protect the ways themselves from injury from overloaded vehicles. But the Cambridge authorities in considering an application for a permit under the statute should have weighed as well other possible effects of the proposal, particularly because of the prohibition of the city ordinance against moving over city

streets vehicles so loaded as to be likely to injure property.[2] Failure to apply for a permit meant that the appropriate authority did not have the opportunity to appraise the risks and probabilities and to refuse the permit or impose conditions.

To deliver the flywheel the defendant used Albany Street for maneuver as well as passage. That delivery would be difficult and would involve maneuvering great weights in a small section of Albany Street was foreseeable. It was foreseeable also that this might affect underground installations. The use of ways in cities for water pipes, sewer pipes and conduits for electric and telephone wires is general and is the subject of common knowledge. We need not decide whether in the absence of the statute due care would have required other preliminary action by the defendant than application for the permit. We think in any event that failure to apply was a failure to exercise due care as to those who might be injured if the load was in fact so heavy as to cause a break and resulting damage. See *Kralik* v. *LeClair*, 315 Mass. 323, 326.

Turning to the ordinances, a proper concern of a municipality is that vehicles using its ways not be "in such condition or so constructed or so loaded as to be likely to cause . . . accident or injury." The standard of the ordinance in this respect is however no more than the standard of due care. The jury from other evidence could have found want of due care. What happened was the kind of thing the ordinance was intended to prevent. In this sense the violation of the ordinance was in the chain of proximate causation, but it was without significance apart from such evidence of negligence. The violation of the ordinance barring the crossing of the sidewalk was not, we think, in the chain of causation. The break occurred not because the

---

[2] Conditions imposed by the Department of Public Works in the permit issued to the defendant to use State highways indicate that officials acting under G. L. c. 85, § 30, had had regard to the possibility of injury to persons and private property: "During the progress of the work all structures underground and above ground shall be properly protected from damage or injury . . . and the Grantee shall be responsible for all damages to persons or property due to or resulting from any work done under this permit."

rig was for a time on the sidewalk, but because it was too heavy to be anywhere in the public way.

2. The verdicts were supported by proof of negligence and not founded in speculation and conjecture.

Apart from the excluded expert testimony it was a reasonable conclusion from the evidence that the great pressure in the street had caused a lowering of the connecting pipe in that part of its forty foot length that underlay the rig. An expert was not essential to demonstrate that the effect of downward movement on that part of the rigid pipe that was in the street would be an upward thrust of its other end inside the foundation wall on which it rested. It was also a reasonable layman's conclusion that all rigid pipes on the basement side of the coupling would as a result be under stress and that a fracture at some point in the system was likely.

That the fracture occurred a number of hours after the time when the stress was created in the system did not make the cause conjectural. A delay between the distortion and the break was entirely consistent with initial slight adjustment in the position of the relatively rigid pipes which created tension throughout all of them, and the eventual release of the tension by a break occurring at the weakest point in the system.

In this the jurors were concerned with the operation of established physical principles and circumstances to which they could apply their knowledge and experience. *Gates* v. *Boston & Maine R.R.* 255 Mass. 297, 302. *Dean* v. *Coombs Motor Co.* 327 Mass. 147, 150. *Piontek* v. *Joseph Perry, Inc.* 342 Mass. 342, 343. The plaintiffs were not bound to exclude the operation of other possible causes. It is sufficient if the cause shown is made to appear the probable cause of the accident. *West* v. *Molders Foundry Co. Inc.* 342 Mass. 8, 12–13. Restatement 2d: Torts, § 433, comment f.

It follows that the expert testimony, although not required to take the case to the jury, was not founded on conjecture and was admissible.

The evidence before the jury varies somewhat from that stated in the auditor's subsidiary findings, in particular in respect to the downward pitch of the connecting pipe outside the wall and its upward pitch in the basement; also as to the extent or effect of the fall of the trailer onto the eight by eight inch blocks. It is unnecessary to rule whether the conclusion of the auditor of failure to show causal connection was required on the subsidiary facts of the report. See *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 566–567.

The rescript shall state: 1. The evidence showed violations of law and ordinance that were in the chain of proximate causation; 2. The verdicts were supported by proof of negligence; 3. The verdicts should not be set aside.

*So ordered.*