Edward A. Schrottman vs. Michael Barnicle.

Suffolk. March 1, 1982. — June 29, 1982.

Present: Hennessey, C.J., Abrams, Nolan, Lynch, & O'Connor, JJ.

*Libel and Slander. Constitutional Law*, Freedom of speech and press, Libel. *Practice, Civil*, Retroactive effect of judicial decision, Findings by judge. *Negligence*, Newspaper reporter.

The rule in *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849 (1975), that a "private" person may recover for libel upon proof of negligence, rather than having to establish actual malice, was applicable retroactively to this action for libel against a newspaper reporter based on his publication in 1973 of an article concerning a subject of general or public interest. [630-638]

In an action for libel to which the proof of negligence standard enunciated in *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849 (1975), was applicable retroactively, the judge's failure to identify the standard of liability he applied, or to make findings on the question of negligence in accordance with Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), required that this case be remanded for the entry of a finding on the issue of negligence. [638-640]

In an action for libel brought by a "private" person against a newspaper reporter based on his publication of an article concerning a subject of general or public interest, the evidence was sufficient to warrant a finding that the reporter was negligent as to both the defamatory impact and the inaccuracy of his article. [640-642]

Civil action commenced in the Superior Court on July 1, 1974.

The case was heard by *Whitman*, J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James F. McHugh (William G. Southard* with him) for the defendant.

*Ellen Y. Suni (Jack I. Zalkind* with her) for the plaintiff.

HENNESSEY, C.J.   This case, which began as a claim of libel and invasion of privacy against a newspaper, an editor, and a reporter, was tried without jury before a judge of a District Court sitting by assignment in the Superior Court who found for the plaintiff against the reporter.   The principal issue on appeal is whether the rule of *Stone* v. *Essex County Newspapers, Inc.,* 367 Mass. 849 (1975), that a "private" person may recover for libel upon proof of negligence, should apply retroactively to the defendant's newspaper article.   We conclude that the *Stone* negligence standard should apply to this case and that the evidence is sufficient to warrant a finding of negligence.   We remand the case to the Superior Court for findings by the trial judge on the issue of negligence.

The plaintiff is the proprietor of a gasoline station on Blue Hill Avenue in Dorchester.   On January 8, 1973, Michael Barnicle, a columnist for the *Boston Globe* newspaper and a stranger to the plaintiff, visited the plaintiff's gasoline station.   At the time, Barnicle was gathering information for one of a series of articles on "regular working people in the neighborhoods who are not usually covered by newspapers."   He engaged the plaintiff in a conversation about the neighborhood and the plaintiff's life and business.

On January 30, 1973, an article by Barnicle, entitled "Blue Hill Av.:  changing scene, way of life," appeared in the Boston Globe newspaper.   The article attributed several remarks to the plaintiff, notably the statement that "life on Blue Hill avenue in 1972 . . . is 'o.k. if you're a nigger.'"[1]

---

[1] The text of the article, in so far as it involved the plaintiff, was as follows: "Eddie Schrottman stood looking out the window of his gas station on Blue Hill avenue and talked about how his neighborhood and his business have changed over the eleven years he's been pumping gas and fixing cars in what was once this city's great Jewish ghetto:

"Business is o.k. It's just changed color.

"Other things have changed too.

"Eleven years ago, Eddie used to carry his change and maybe a cigarette lighter in his right pants pocket. Now he carries a small Smith and Wesson revolver . . . all day . . . every day. Eddie says 'there are too

The plaintiff brought this action against Barnicle, the Boston Globe, and Thomas Winship (editor of Boston Globe), charging that the article had caused him mental suffering, as well as loss of business and reputation.

At trial, much of the testimony centered on what the plaintiff had said in his conversation with Barnicle on January 8. The plaintiff asserted that he had not made the statement quoted above, and had not used the term "nigger." Barnicle maintained that he had. The plaintiff also denied certain information recited in the article, such as a statement that he had moved to the suburbs for fear that his wife and children would be mugged in the Blue Hill Avenue area. On other points, the parties' descriptions of the interview were similar.

The parties presented various evidence bearing on the methods by which Barnicle gathered and recorded information. Barnicle testified that he had, in the course of one day, interviewed a number of business proprietors on Blue Hill Avenue. He had then returned to his office to write the article, relying on a combination of notes and memory. Although Barnicle asserted that he had taken notes during his interview with the plaintiff, the plaintiff testified, and the judge found, that Barnicle had taken no notes in the plaintiff's presence.

The judge also had before him Barnicle's notes, which covered seven interviews. The phrase "o.k. if you're a nigger" appears on the third page of the notes, but is not set off by quotation marks. The plaintiff's name is interlineated

---

many nuts in the world.' Four years ago, Eddie moved his family to the suburbs so his wife could shop and his kids could go to school without getting mugged.

"According to Eddie, life on Blue Hill avenue in 1972 . . . 'is o.k. if you're a nigger.' What used to be an area of fine homes and busy specialty shops is now a neighborhood of fear and suspicion; a place where the streets are Sunday night empty at noon on weekdays; a place where the few white merchants who remain are caged and locked like prisoners in their own stores; where the graffiti scarred, boarded up, abandoned fronts of places like Feldman's Pharmacy and the G & G Delicatessen stand as mute testimony to an earlier, easier time."

just above the phrase, but appears again several lines below. The balance of the notes between the plaintiff's name and that of the next interview subject mention some but not all of the statements and information attributed to the plaintiff in the article.

Pursuant to a pretrial order, the parties submitted to the judge a stipulation listing six questions, which they described as the "factual issues presented." Following this list, the judge found that (1) the article was libelous, because it attributed to the plaintiff a racial epithet that suggested he was a bigot, and therefore held him up to scorn, hatred, ridicule, or contempt by respected members of the community; (2) Barnicle had not identified himself to the plaintiff as a reporter and had received no permission from the plaintiff to publish the statements in the article; (3) the article addressed a matter of public interest; (4) the defendant Thomas Winship had not actively participated in publication of the article; (5) the "things attributed to [the plaintiff] in the article, in their most essential parts, were not said by him"; and (6) the plaintiff had suffered mental anguish and damage to his reputation. The judge then entered judgment in the plaintiff's favor against Barnicle in the amount of $25,000, based on the claim of libel.[2] He also entered judgments in favor of the defendants Boston Globe newspaper and Thomas Winship. Barnicle appealed, and we transferred the case to this court on our own motion.

1. *Retroactive Application of Negligence Standard.*

There is no question that the plaintiff is a private person and that, under current standards, a private person may recover for libel upon proof that the defendant acted negligently in publishing defamatory material. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 851, 858 (1975). *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 347 (1974). Barnicle contends, however, that his conduct should be judged by the standard of liability prevailing in 1973, when he wrote the article at issue. He further argues that the law in

---

[2] See note 8, *infra.*

1973 required proof of "actual malice" in any libel action in which the allegedly libelous publication addressed matters of public concern, even though the plaintiff was a private person. See *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29, 44 (1971) (opinion of Brennan, J.).

Decisional law is generally applied "retroactively" to past events. *Tucker* v. *Badoian*, 376 Mass. 907, 919 (1978) (Kaplan, J., concurring). In an ideal world, courts are said to find and declare law, rather than to create new law that might surprise past actors. 1 W. Blackstone, Commentaries *69. See Mishkin, Forward: The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56, 58-60 (1965); Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 945-946 (1962). Moreover, retroactive application of decisional law provides the necessary incentive to those aggrieved to press for change and improvement in law, and is consistent with the institutional duty of courts to resolve disputes brought before them. See Mishkin, *supra* at 60-62, 70-72; Note, *supra* at 912. Nevertheless, it is sometimes necessary to depart from the general rule of retroactivity, in order to protect the reasonable expectations of parties. E.g., *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282-283 (1980); *Rosenberg* v. *Lipnick*, 377 Mass. 666, 671 (1979); *Tucker* v. *Badoian, supra* at 918-919 (Kaplan, J. concurring). See Traynor, Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility, 28 Hastings L.J. 533, 545-546 (1977) (reliance on law in planning private conduct more likely in fields of contract and property than in tort).

In *McIntyre* v. *Associates Financial Servs. Co. of Mass., Inc.*, 367 Mass. 708 (1975), we summarized the principles that determine whether an exception to retroactivity is warranted. The applicability of newly announced decisional law to past events should depend on (1) the extent to which the decision creates a novel and unforeshadowed rule; (2) the benefits of retroactive application in furthering the purpose of the new rule; and (3) the hardship or inequity likely

to follow from retroactive application. *Id.* at 712. On this analysis, we conclude that the negligence standard established in *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849 (1975), should apply to the present case. Accord, *Taskett* v. *King Broadcasting Co.*, 86 Wash. 2d 439, 448-450 (1976).

Application of the first *McIntyre* factor to the present case is complicated by a dispute as to what standard *Stone* displaced, and which party was aided by the change. Some discussion of chronology is necessary to explain the problem. Before 1964, the First Amendment to the United States Constitution was not thought to affect recovery for defamation. Publication of a defamatory falsehood was sufficient ground for liability, even when the defendant was not at fault in any degree. See *Sweet* v. *Post Publishing Co.*, 215 Mass. 450, 452-455 (1913); *Burt* v. *Advertiser Newspaper Co.*, 154 Mass. 238, 242-245 (1891). In 1964, the Supreme Court held, in *New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964), that defamatory falsehoods concerning a public official are privileged unless published with "actual malice." Under the "actual malice" standard, a public official can recover for defamation only upon proof that the defendant acted with knowledge of the falsity of his statements, or with reckless disregard of the truth. *Id.* at 279-280. See *St. Amant* v. *Thompson*, 390 U.S. 727, 730-731 (1968) (subjective standard); *Curtis Publishing Co.* v. *Butts*, 388 U.S. 130, 155 (1967) (actual malice standard applies to "public figures" as well as public officials).

In 1971, the Court decided *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 (1971). In *Rosenbloom*, a plurality of three Justices expressed the view that the actual malice standard should apply whenever an allegedly defamatory publication involved a matter of general concern, without regard to the plaintiff's status as a public or private figure. *Id.* at 41-44, 52 (opinion of Brennan, J., joined by Burger, C.J., and Blackmun, J.). Justice White concurred on the narrower ground that the malice standard should extend to the contents of a report of official action, including any

reference to private individuals involved in the official action. *Id.* at 62 (White, J., concurring). The concurring vote of Justice Black, who reaffirmed his view that the news media should never be held liable for defamation, completed a majority in favor of reversing a judgment for the plaintiff. *Id.* at 57 (Black, J., concurring). Soon after the *Rosenbloom* decision, this court accepted the rule espoused by the *Rosenbloom* plurality as a correct statement of Federal law. Accordingly, the court applied the malice standard in a case involving a publication of general interest, without inquiring whether the plaintiff was a public or private figure. *Priestley* v. *Hastings & Sons Publishing Co.*, 360 Mass. 118, 119-123 (1971).

Three years later, in *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974), a majority of the Supreme Court rejected the view of the *Rosenbloom* plurality, and held that in actions by private persons, States were free to apply any standard of liability other than liability without fault. *Id.* at 347. This conclusion was based on the State's interest in compensating victims of defamatory falsehood, an interest the Court found to be particularly strong when the victim is a private individual. *Id.* at 341-346. In 1975, this court chose negligence as the Massachusetts standard of liability for defamation of a private person. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975).

Barnicle wrote the article at issue in 1973, after *Rosenbloom* and *Priestley*, and before *Gertz* and *Stone.*[3] Because the *Stone* standard offers him greater protection than he would have had at common law, his argument against retroactive application rests solely on *Rosenbloom* and *Priest-*

---

[3] In *Stone*, we treated the negligence standard as the correct standard for resolution of the case then before us if the plaintiff were found on remand to be a private person. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 862 (1975). The article there in question, however, had been published in 1969, before the decisions in *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 (1971), and *Priestley* v. *Hastings & Sons Publishing Co.*, 360 Mass. 118 (1971). *Stone* v. *Essex County Newspapers, Inc.*, *supra* at 852.

*ley.  Rosenbloom,* standing alone, would provide no recognizable ground for a claim of reliance on more favorable prior law.  No five Justices were willing to extend First Amendment protection beyond the rule suggested by Justice White (a malice standard for all statements included in a report of official action), and that rule was itself based on reasoning unique to Justice White.  For present purposes at least, we would not, in interpreting a decision, look beyond points on which the Justices have agreed through the formal process of judicial decisionmaking.  See generally Note, The Precedential Value of Supreme Court Plurality Decisions, 80 Colum. L. Rev. 756 (1980).  See also Monaghan, Taking Supreme Court Opinions Seriously, 39 Md. L. Rev. 1 (1979).[4]  This court's decision in *Priestley,* however, established the rule of the *Rosenbloom* plurality as the prevailing law in Massachusetts.  *Stone,* then, must be viewed as having diminished the reporter's privilege as it existed when Barnicle wrote the article at issue.

Nevertheless, as our lengthy preliminary discussion should indicate, Barnicle had reason to doubt the durability of his privilege.  The malice standard as a measure of liabil-

---

[4] Although both parties acknowledge that speculation concerning the personal views of the Justices is generally considered inappropriate, neither can resist an argument on this score.  Barnicle points out that Justice Douglas, who shared Justice Black's view that news media enjoyed an absolute privilege, did not participate in *Rosenbloom.*  If he had, Barnicle argues, his vote would have established a majority favoring at least a requirement of malice in private figure defamation suits.  The plaintiff responds that, at the time Barnicle wrote the article at issue, Justice Black had died.

The parties also debate the direction in which the trend in First Amendment law was moving at the time the article was published. The defendant perceives a general tendency to expand publishers' privileges from *New York Times* v. *Sullivan,* 376 U.S. 254 (1964), through *Rosenbloom* v. *Metromedia, Inc.,* 403 U.S. 29 (1971).  The plaintiff, on the other hand, sees a loss of momentum in expansion, manifested in increasing dissents. Although consideration of trends in the law may be useful for some purposes, and may reveal warning signals that negate justified reliance on prior law, see Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 947 (1962), a trend alone cannot provide the basis for a claim of reliance.

ity in private figure defamation suits was quite recent, and still unsettled at the Federal level. *Priestley* was based expressly on the perceived requirements of Federal law, 360 Mass. 118, 119 (1971), and the court showed some reluctance to embrace actual malice as the standard in all cases. See *id.* at 123 (noting time constraints on defendant publisher). Thus, in answer to the first inquiry under the *McIntyre* test for retroactivity, we conclude that *Stone* established a new rule, but that the change was not a departure from firmly established law, and should not have caused great surprise to those who had acted during the prevalence of *Rosenbloom* and *Priestley.*

Moving to the second of the *McIntyre* factors, we find that the purposes of the *Stone* rule, like those of most tort rules, will benefit from retroactive application. We adopted a negligence standard as an accomodation between First Amendment principles and the State's strong interest in affording a remedy to defamed individuals. *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975). Application of this standard to statements published before *Stone* will effectuate the balance of interests determined to be appropriate. See *Taskett* v. *King Broadcasting Co.*, 86 Wash. 2d 439, 449-450 (1976).

Barnicle, focusing on the third *McIntyre* factor, suggests that several negative consequences will follow from retroactive application of *Stone.* First, he contends that a negligence standard is unfair to him personally, because he may have relied on *Rosenbloom* and *Priestley* in ordering his conduct. The principal reason for limitations on retroactivity, and the central purpose of the *McIntyre* analysis, is protection of justified reliance on law prevalent at the time of conduct, by an actor whose conduct later comes to trial under changed or changing law.[5] Nevertheless, we are not

---

[5] It might be argued that conduct once privileged cannot later be treated as unprivileged, on the ground that privilege attaches to conduct at the time of action. We believe, however, that the law is best viewed as a means to resolve conflict, operating at the time of decision. On this view, the state of the law at the time of action is relevant, not as controll-

persuaded by Barnicle's claim of reliance. As we explained above, the malice standard was not settled law, and so could not provide firm ground for reliance. Further, in asserting that he relied on the protection of a malice standard, Barnicle can only mean that he made a calculated decision not to exercise due care. Reliance of this kind is only a short step from reckless disregard of truth (malice), and does not support a compelling claim of inequity. See *Taskett* v. *King Broadcasting Co.*, 86 Wash. 2d 439, 450 (1976).

Second, Barnicle suggests that retroactive application of a decision that has narrowed the scope of a First Amendment privilege may have a "chilling" effect on the exercise of First Amendment rights. We take this to mean that instability in the law defining privileged speech, coupled with retroactive application of decisions to persons whose statements were protected when made, will discourage other speakers and writers from taking full advantage of existing privileges. This is a serious concern. The Supreme Court has recognized in several contexts that laws affecting First Amendment rights should be fashioned and applied with special attention to the possibility of self-censorship by privileged speakers. Such sensitivity, in procedural as well as substantive law, is necessary to ensure an environment supportive of open debate. See, e.g., *Buckley* v. *Valeo*, 424 U.S. 1, 40-41 (1976) (lack of specificity in legislation); *Miami Herald Publishing Co.* v. *Tornillo*, 418 U.S. 241, 257 (1974) (access requirement); *Broadrick* v. *Oklahoma*, 413 U.S. 601, 611-613 (1973), and cases cited (standing to raise facial attack on overbroad statutes); *Speiser* v. *Randall*, 357 U.S. 513, 526 (1958) (burden of proof of First Amendment privilege in tax case). But cf. *Branzburg* v. *Hayes*, 408 U.S. 665, 693-695 (1972) (indicating skepticism as to chilling effect of compelled revelation of press sources). See generally Mon-

ing law, but only as it bears on reasonable expectations. In any event, negligence in the circumstances before us was not privileged at the time Barnicle wrote his article. *Rosenbloom*, as we have explained, did not establish a Federal constitutional privilege, and this court's decision in *Priestley* went no further than interpretation of *Rosenbloom*.

aghan, First Amendment "Due Process," 83 Harv. L. Rev. 518 (1970). The malice requirement applicable to public figure defamation actions, and the prohibition against strict liability in private figure actions, are themselves examples of this principle. These rules are based, not on any value attributed to defamatory falsehood, but on the need to provide "breathing space" for legitimate speech. *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 340-341 (1974).

Although we recognize the danger of deterring free debate, we do not believe it justifies a blanket rule, applied without regard to the presence or absence of prejudice to particular defendants, that decisions narrowing First Amendment privilege can never apply retroactively. Such a rule would result not only in denial of compensation to injured plaintiffs, but also in the institutional problems we described at the outset of our discussion of retroactivity. In particular, parties aggrieved by inequitable law would have no incentive to seek change if courts refused to apply new law to disputes before them.[6] Mishkin, Forward: The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56, 70-72 (1965). More important, speakers and writers who rely on existing privilege are not without protection. Principles of due process prevent retroactive imposition of criminal penalties on the basis of a change in the law governing First Amendment privilege. *Marks* v. *United States*, 430 U.S. 188, 191 (1977). When no criminal sanctions are involved, the safeguards of the *McIntyre* analysis assure speakers and writers that reasonable reliance on established law will not lightly be repudiated. We are aware of the need for special protection in areas

---

[6] Retroactive application of a new rule to the case in which the rule is established, but not to subsequent cases arising from events that occurred before the change, is not a satisfactory solution. See *Taskett* v. *King Broadcasting Co.*, 86 Wash. 2d 439, 452-453 (1976) (Stafford, C.J., concurring in part and dissenting in part). Such a rule produces disparate treatment of similarly situated parties, and does not assure speakers of immunity from liability for words that are privileged when spoken. See R.E. Keeton, Venturing to do Justice 36 (1969).

affecting freedom of speech, and will apply *McIntyre* accordingly.   These limitations on retroactive effect should avert any significant deterrence of free debate.

In sum, we acknowledge that Barnicle's liability under *Stone* is greater than it would have been under the law prevailing when his article was published.   On close analysis, however, we find that the privilege he invokes was not firmly settled, and did not warrant reliance.   Retroactive application of *Stone* will further the purposes of the rule there established, and will cause no significant prejudice to First Amendment interests.   Therefore, we conclude that Barnicle's conduct should be judged by a negligence standard.

2. *Findings of Fact and Conclusions of Law.*

Barnicle argues that even if the correct standard is one of negligence, the case must be remanded because the judge failed to comply with Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974), which requires a judge who sits without a jury to set forth findings of fact and conclusions of law to support his decision.[7]   Barnicle's principal complaints are that the judge did not identify the standard of liability he applied, and that he made no findings on the question of negligence. We agree that these omissions require a remand.

Rule 52 (a) of the Massachusetts Rules of Civil Procedure does not require extensive detail, but does impose on the judge an independent duty to articulate the essential grounds of his decision.[8]   See Advisory Committee Note on

---

[7] The portion of the rule important to this case provides that, "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . . Requests for findings are not necessary for purposes of review." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974).

[8] Barnicle raises certain minor objections to the judge's findings of fact and rulings of law which illustrate the type of detail that Mass. R. Civ. P. 52 (a) does not require.   In Barnicle's view, the judge did not identify sufficiently the statements he found to have been attributed falsely to the plaintiff.   The judge's discussion of the defamatory character of the article, however, makes clear that he was concerned with the quotation containing the term "nigger."   Read in context, his finding that "the things

1946 Amendment to Fed. R. Civ. P. 52 (a). Its purpose is to ensure that the judge "may be satisfied that he has dealt fully and properly with all the issues" and that "the parties involved and this court on appeal may be fully informed as to the bases of his decision." *Markell* v. *Sydney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 416 (1980), quoting from *Roberts* v. *Ross*, 344 F.2d 747, 751-752 (3d Cir. 1965). See J.W. Smith & H.B. Zobel, Rules Practice § 52.4 (1977). Here, these purposes have not been fulfilled. There are faint indications that the judge applied a negligence standard — a citation to *Stone* v. *Essex Newspapers, Inc.*, 367 Mass. 849 (1975), in the course of his discussion of the article's defamatory nature, and a finding that the defendants Boston Globe and Winship were not negligent. But there is no finding that Barnicle was negligent, and no definite incorporation of the negligence standard set out in *Stone*. Although these omissions are very likely due to the manner in which the parties framed the factual issues in their stipulation of the questions presented, the judge's responsibilities under Mass. R. Civ. P. 52 (a) extend beyond the parties' specific requests for findings.[9] See Mass. R.

---

attributed to [the plaintiff] in the article, in their most essential parts, were not said by him," contains no ambiguity.

Barnicle also argues that the judge's memorandum does not specify whether the plaintiff's recovery was based on libel or invasion of privacy. In discussing damages, however, the judge relied on "the comments falsely attributed to [the plaintiff], and we have no trouble in ascertaining from this reference that the basis of his judgment was libel. In this circumstance, the absence of more specific "conclusions of law" on this point, even if necessary to fulfil the technical requirements of Mass. R. Civ. P. 52 (a), would not warrant a remand. Cf. *Commonwealth* v. *One 1969 Mercedes-Benz Auto.*, 375 Mass. 663, 666 n.3 (1978).

Finally, Barnicle suggests that the judge should have spelled out his allocation of burden of proof of falsity. We disagree. When a judge has made an affirmative finding on sufficient evidence, the burden of proof need not be delineated. See *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Comm'n*, 377 Mass. 847, 852 (1979).

[9] It could perhaps be argued that, having stipulated to the factual issues presented, Barnicle cannot now complain of omissions in the judge's findings of fact. This argument is reinforced by the judge's pretrial order, which required the parties to prepare a complete statement of factual issues, and provided that any issues not listed would be "waived." Neither party, however, has relied in any way on the pretrial order or the stipula-

Civ. P. 52 (a); J.W. Smith & H.B. Zobel, *supra* at § 52.3. On this record, we cannot be certain that the judge considered and applied the established and essential requirement of negligence in reaching his decision. Contrast *Commonwealth* v. *One 1969 Mercedes-Benz Auto.*, 375 Mass. 663 (1978) (all necessary facts contained in uncontradicted testimony). Therefore, we remand for the entry of a finding on the issue of negligence. See 5A Moore's Federal Practice par. 52.13 (2d ed. 1982).

3. *Sufficiency of the Evidence.*

We turn now to the question whether the record will support a finding of negligence. Barnicle asserts that the plaintiff's right to recover depends on a showing that Barnicle was negligent with respect to both the untruth of his report and its defamatory character. See *Cefalu* v. *Globe Newspaper Co.*, 8 Mass. App. Ct. 71, 76 (1979), appeal dismissed and cert. denied, 444 U.S. 1060 (1980); Restatement (Second) of Torts § 580B, Comment g (1977). See also *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 348 (1974). We did not establish in *Stone* that proof of negligence as to the defamatory character of a report is prerequisite to a private plaintiff's recovery for defamation, and we need not decide the issue in the present case. The plaintiff does not contest Barnicle's definition of the relevant negligence, and we therefore assume for present purposes that it is correct.[10]

Our inquiry is, of course, limited to the sufficiency of the evidence, and we leave the final determination of the question of negligence to the judge, who has heard the evidence and can best determine its credibility. Mass. R. Civ. P. 52 (a). We believe that if the evidence were read in the light most favorable to the plaintiff, and all questions of credibility resolved in favor of the plaintiff, the record would support

tion in its arguments before us. Therefore, we do not consider the effects of the order and stipulation on the operation of Mass. R. Civ. P. 52 (a).

[10] The plaintiff also appears to accept the burden of establishing negligence, and does not claim the benefit of any presumptions or shifting burdens of production and persuasion. See Restatement (Second) of Torts § 580B, Comment j (1977). We express no opinion on these matters.

a finding of negligence as to both defamatory impact and inaccuracy. As to defamatory impact, the issue is whether in the circumstances of this case a reasonably prudent person, writing an article for publication, would realize that attribution of the racial reference would discredit the plaintiff in the minds of a "considerable and respectable segment in the community." *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). See *Myers* v. *Boston Magazine Co.*, 380 Mass. 336, 338-345 (1980); *Tropeano* v. *Atlantic Monthly Co.*, 379 Mass. 745, 751 (1980); Restatement (Second) of Torts §§ 565, 566 (1977). To determine whether Barnicle was negligent with respect to accuracy, the judge could consider the testimony concerning Barnicle's notetaking and research methods, as well as the clarity and reliability of the notes themselves. This evidence should be viewed in light of circumstances including the relative risk of harm and the presence or absence of time constraints against verification. Cf. *Liquori* v. *Republican Co.*, 8 Mass. App. Ct. 671, 676-677 (1979).

Barnicle also suggests that a finding of negligence must be supported by expert testimony concerning custom and practice among professional journalists. See *Martin* v. *Griffin Television, Inc.*, 549 P.2d 85, 92 (Okla. 1976); *Seegmiller* v. *KSL, Inc.*, 626 P.2d 968, 976 (Utah 1981); Restatement (Second) of Torts § 580B, Comment g (1977). This argument is not at all persuasive when asserted defensively by a member of the profession. In such a context it can only mean that the professional journalist should be judged by a standard below that of ordinary care. Negligence throughout a trade should not excuse its members from liability. See *Troman* v. *Wood*, 62 Ill. 2d 184, 197-198 (1975); *McCall* v. *Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 895 (Ky. 1981), petition for cert. filed, 50 U.S.L.W. 3784 (March 30, 1982); *Memphis Publishing Co.* v. *Nichols*, 569 S.W.2d 412, 418 (Tenn. 1978). See also *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir.), cert. denied sub nom. *Eastern Transp. Co.* v. *Northern Barge Corp.*, 287 U.S. 662 (1932). In addition, we hesitate to involve the courts in fashioning

rules for journalistic practice. See L. Tribe, American Constitutional Law 167 (1978).

Nor do we believe that expert testimony is necessary to enable triers of fact to apply a standard of ordinary negligence to the methods used by a journalist to record interviews. Due care in gathering information is not technical matter for which a jury unaided by experts would have no basis for decision. See, e.g., *Stimpson* v. *Wellington Serv. Corp.*, 355 Mass. 685, 691 (1969); *Toppin* v. *Buzzards Bay Gas Co.*, 348 Mass. 397, 401 (1965).

4. *Invasion of Privacy.*

Barnicle has devoted a portion of his brief to the argument that the record does not support recovery on a theory of invasion of privacy. We do not reach this question, because the judge did not rely on invasion of privacy,[11] and the plaintiff has not invoked that theory in his arguments in support of the judgment.

5. *Conclusion.*

We conclude that this case is governed by the negligence standard adopted in *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849 (1975), and the evidence is sufficient to warrant a finding of negligence. We vacate the judgment and remand the case to the Superior Court for findings as to whether Barnicle was in fact negligent.

*So ordered.*

---

[11] See note 8 *supra*.