Harvey M. SANDERS, Petitioner,
Appellant,

v.

Michael FAIR, et al., Respondents,
Appellees.

No. 83–1611.

United States Court of Appeals,
First Circuit.

Argued Dec. 9, 1983.

Decided Feb. 29, 1984.

Certiorari Denied June 18, 1984.
See 104 S.Ct. 3541.

Brownlow M. Speer, Boston, Mass., for petitioner, appellant.

Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for respondents, appellees.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BREYER, Circuit Judge.

This appeal from a federal district court decision denying appellant Sanders' petition for a writ of habeas corpus arises out of his state court trial for rape. At the trial Sanders' counsel, noting that his client was black and the victim was white, asked permission to question prospective jurors individually about possible racial prejudice. The trial judge felt that, under the circumstances, individual questioning was not required, though he himself raised the issue of racial prejudice generally with the panel of prospective jurors. The jury convicted Sanders and he appealed, claiming that the refusal to allow individual questioning violated Mass.Gen.Laws ch. 234, § 28, which requires individual examination of a juror for bias in any case where

> it appears that, as a result of ... community attitudes, ... or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent.

On appeal, the Supreme Judicial Court (*Commonwealth v. Sanders,* 383 Mass. 637, 421 N.E.2d 436 (1981)) held that the trial judge had not violated existing state law, which it had previously interpreted to require special questioning only where the judge found "reason to suspect" or "substantial risk" that the jurors might be affected by prejudice, *see, e.g., Commonwealth v. Horton,* 376 Mass. 380, 395, 380 N.E.2d 687, 697 (1978) (quoting *Common-*

*wealth v. Dickerson,* 372 Mass. 783, 793, 364 N.E.2d 1052, 1059 (1977)), *cert. denied sub nom. Wideman v. Massachusetts,* 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979); *Commonwealth v. Campbell,* 378 Mass. 680, 696, 393 N.E.2d 820, 830 (1979). No such "risk" or "reason" existed here. The court, however, pointed out that in the past it had characterized the allowance of individual juror questioning in interracial rape cases as the better practice. *Commonwealth v. Sanders,* 383 Mass. at ——, 421 N.E.2d at 437 (citing *Commonwealth v. Lumley,* 367 Mass. 213, 216, 327 N.E.2d 683, 686 (1975)). And it concluded that in future interracial rape cases section 28 should be interpreted to require such questioning at defendants' request. 383 Mass. at ——, 421 N.E.2d at 438. Such a requirement would assure "caution and certainty in the application of § 28," *Commonwealth v. Hobbs,* 385 Mass. 863, 873, 434 N.E.2d 633, 641 (1982), and would also serve to "avoid needless appeals," *Commonwealth v. Lumley,* 367 Mass. at 217, 327 N.E.2d at 686. The Supreme Judicial Court, however, did not apply its new rule to Sanders' case. And Sanders filed a habeas petition in federal court claiming that the state court's failure to do so violated the federal Constitution. The district court did not agree with his arguments; nor do we.

Sanders does not claim that the federal Constitution compels individual juror questioning in his case. He cannot do so, for the Supreme Court has held that the Constitution requires such an inquiry only where explicit racial issues are "inextricably bound up with the conduct of the trial." *Ristaino v. Ross,* 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976); *see Dukes v. Waitkevitch,* 536 F.2d 469 (1st Cir.) (per curiam), *cert. denied,* 429 U.S. 932, 97 S.Ct. 340, 50 L.Ed.2d 302 (1976); *Commonwealth v. Lumley, supra. Cf. Rosales-Lopez v. United States,* 451 U.S. 182, 192, 101 S.Ct. 1629, 1636, 68 L.Ed.2d 22 (1981) (plurality opinion) (requiring specific inquiry into juror bias, in exercise of Court's *supervisory* power). The unchallenged state court finding that the trial court satisfied stronger state law requirements re-

moves this federal issue from the case. And the absence of a federal basis for appellant's underlying claim makes inapplicable in turn those federal cases discussing the federal question of when courts should apply *federal* rules of law retroactively. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Jackson v. Justices of the Superior Court,* 549 F.2d 215 (1st Cir.), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977). *But cf. United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (abandoning reliance on *Stovall* factors, although only in fourth amendment cases on direct review).

Here, we face only the question of whether, or when, the federal Constitution requires a state court to apply a new rule of *state* law retroactively. This question was answered by Justice Cardozo, speaking for the Supreme Court, in 1932. He said that

the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward.... The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts.

*Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364–65, 53 S.Ct. 145, 148–49, 77 L.Ed. 360 (1932). *See also Prater v. Maggio,* 686 F.2d 346 (5th Cir.1982) (relying on *Sunburst* to dismiss habeas petition challenging purely prospective reinterpretation of state law); *Lewinski v. Ristaino,* 448 F.Supp. 690, 696 (D.Mass.1978) (same).

Appellant seeks to overcome the force of this language with two arguments. First, he claims that *Sunburst* applies only where a court makes "new" law, say, by overruling a prior decision. He argues that *Sunburst* does not apply where a court, as here, considers a question of statutory interpretation for the first time. Such an "initial" interpretation, in his view, is "a declaration

of what the law has meant from the date of its effectiveness onward." *Strauss v. United States,* 516 F.2d 980, 983 (7th Cir.1975) (quoting *Gates v. United States,* 515 F.2d 73, 78 (7th Cir.1975)).

In our view, however, appellant cannot meaningfully distinguish between precedents that break radically with the past and those that do not. For one thing, as a practical matter the distinction is difficult to draw. One's view about the extent to which any decision "breaks" with the past likely depends upon how broadly or narrowly one reads the new decision, how broadly or narrowly one reads the precedents, and the context in which one places them. It seems unlikely that the *Sunburst* Court would have turned its decision on so subjective a matter. Indeed, as we read the Massachusetts precedents prior to Sanders' case, we would consider its new rule a considerable departure from the Supreme Judicial Court's prevailing approach to section 28, and thus likely to fit within *Sunburst* even on appellant's reading. *See, e.g., Commonwealth v. Shelley,* 381 Mass. 340, 352, 409 N.E.2d 732, 740 (1980); *Commonwealth v. Campbell, supra; Commonwealth v. Horton, supra. See also Commonwealth v. Sanders,* 383 Mass. at ——, 421 N.E.2d at 438 (characterizing prior decisions as having "given insufficient force to § 28").

For another thing, whether a state court decides to make retroactive or prospective its resolution of a previously undecided question of statutory interpretation would seem to involve those very considerations of "juristic philosophy" and "conceptions of law" that Justice Cardozo wrote are up to the state's judges. The Massachusetts Supreme Judicial Court in recent years has frequently introduced new rules, particularly rules involving nonconstitutional matters of criminal procedure, with purely prospective effect as here. *See, e.g., Commonwealth v. Day,* 387 Mass. 915, 921 & n. 10, 444 N.E.2d 384, 387 (1983) (concerning burden of proof of waiver of *Miranda* rights); *Commonwealth v. Lewinski,* 367 Mass. 889, 901–03, 329 N.E.2d 738, 746–47 (1975) (concerning disclosure of prior statements by government witnesses); *Commonwealth v.*

*Stewart,* 365 Mass. 99, 104–08, 309 N.E.2d 470, 474–75 (1974) (concerning disclosure of grand jury testimony of government witnesses); *see also Schrottman v. Barnicle,* 386 Mass. 627, 437 N.E.2d 205 (1982) (general discussion of Massachusetts' approach to retrospectivity, especially in civil contexts); *Commonwealth v. Lewis,* 381 Mass. 411, 409 N.E.2d 771 (1980) (prospective elimination of "year-and-a-day" rule for homicides), *cert. denied sub nom. Phillips v. Massachusetts,* 450 U.S. 929, 101 S.Ct. 1386, 67 L.Ed.2d 360 (1981). It has explained that total retroactivity of a rule like the one announced in *Sanders* could "have a calamitous impact on the criminal justice system[ ]"—an adverse impact that is unnecessary where the pre-existing practice had not "materially tainted the outcome of the trial." *Commonwealth v. Lumley,* 367 Mass. at 219 & n. 5, 327 N.E.2d at 687. And, when it makes a rule *purely* prospective, it does so in part because it believes that to apply the prospective rule to the case before it would produce "disparate treatment of similarly situated parties." *Schrottman v. Barnicle,* 386 Mass. at 637 n. 6, 437 N.E.2d at 212. Any disagreement with this approach strikes us as conceptual and philosophical, not legal.

This is not a case in which a state court has acted gratuitously or without reason. It is not a case where a state court seeks to disturb preexisting reliance, *cf. Linkletter v. Walker,* 381 U.S. 618, 636–40, 85 S.Ct. 1731, 1741–43, 14 L.Ed.2d 601 (1965) (emphasizing importance of protecting justified reliance on prior rule); *Schrottman v. Barnicle,* 386 Mass. at 635–36, 437 N.E.2d at 211 (same), nor a case in which it imposes a harsh new rule retroactively, *cf. Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (discussing fundamental unfairness of retroactive enlargement of scope of criminal statute), nor a case that, as far as we can see, involves any other sort of fundamental unfairness, *cf. Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (retroactivity necessary where former practice raises serious questions about accuracy of

**560**

prior guilty verdicts). In our view *Sunburst* applies and controls.

Second, Sanders argues that the state court's decision not to apply its new rule to his case deprives him of "equal protection of the laws," that it unconstitutionally discriminates between him and others. We are not completely certain which "others" Sanders has in mind. Certainly the Supreme Judicial Court has announced purely prospective rules in other cases. And it has adhered to the purely prospective characterization of the *Sanders* rule in subsequent cases involving jury questioning in interracial sexual assault cases tried prior to the new rule's announcement. *See, e.g., Commonwealth v. Sowers,* 388 Mass. 207, 214, 446 N.E.2d 51, 55 (1983); *Commonwealth v. Hobbs,* 385 Mass. at 873, 434 N.E.2d at 641.

[1, 2] Nor can Sanders complain of the distinction drawn between those tried before and those tried after the Supreme Judicial Court issued its opinion in his case. Since the "jury questioning" issue is one of state procedural law, and does not involve protections required by the federal Constitution, no "fundamental right" is at issue. *See Ristaino v. Ross, supra; cf. Schilb v. Kuebel,* 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971). Thus, the "equal protection" question is solely whether the state's distinction between litigants such as Sanders and those who will enjoy the benefit of the new rule in the future is rational. *See, e.g., id.,* 404 U.S. at 365, 92 S.Ct. at 484; *Rinaldi v. Yeager,* 384 U.S. 305, 308–09, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). We have already discussed the Supreme Judicial Court's reasons. We see nothing irrational about them. Retroactive application would surely have been far more burdensome for the Commonwealth than the prospective approach. And, to the extent that the court's purpose was to remove one frequently recurring ground for appeals in interracial rape cases, *see Commonwealth v. Lumley,* 367 Mass. at 217, 327 N.E.2d at 686, retrospective application would have been counterproductive.

The decision of the district court dismissing the petition for habeas corpus is

*Affirmed.*