MARY ROE[1] *vs.* EDWARD J. LAWN & others[2]; AETNA
CASUALTY AND SURETY COMPANY & others,[3] third-party
defendants.

No. 92-P-44.

Norfolk. February 9, 1993. - July 8, 1993.

Present: DREBEN. SMITH, & GILLERMAN. JJ.

Further appellate review granted, 416 Mass. 1103 (1993).

*Insurance,* Motor vehicle insurance, Insurer's obligation to defend, Con-
struction of policy, Coverage. *Words,* "Accident."

A transportation company's insurer was obligated under its business motor
vehicle policy to indemnify and defend the company in a civil action
brought by a passenger on the company's school bus who was sexually
assaulted on the bus by the company's driver in the course of perform-
ing the company's duty to transport the passenger to school, where, as
it was undisputed that the company did not direct or commit the as-
sault, the injury sustained by the victim was an "accident" within the
terms of the policy, which, by defining "accident" to include assault
and battery, extended coverage to acts of deliberate wrongdoing; and
where the driver's assault, while an "accident," was an act "arising out
of" the "ownership, maintenance or use" of the company's school bus.
[727-731]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 23, 1989.

A motion of the third-party defendant, Aetna Casualty
and Surety Company, for summary judgment was heard by
*James P. Lynch, Jr.,* J., and entry of separate and final judg-
ment was ordered by him.

*J. Michael Conley* (*Paul F. Kenney* with him) for the
plaintiff.

[1]By her mother and next friend. The name Mary Roe is fictitious.

[2]Braintree Veteran's Taxi, Inc.; Braintree Town Taxi, Inc.; Braintree
Livery Service, Inc.; Eugene F. Maloney, individually, and Eugene F.
Maloney and Dorothy M.L. Maloney, as trustees of the Malvet Trust.

[3]Edward Lee McDermott and National Casualty Co.

*John P. Graceffa* for Aetna Casualty and Surety Company.

*Beth S. Stomberg,* for Edward Lee McDermott, was present but did not argue.

GILLERMAN, J. The plaintiff, a minor and a special needs student at St. Coletta's School in Braintree, was sexually assaulted by the defendant Lawn, the driver of a school bus owned by defendant Braintree Town Taxi, Inc. ("Taxi"),[4] while Lawn was driving her to school.

The issue to be decided relates only to Taxi's third-party action against Aetna Casualty and Surety Company (Aetna). Taxi seeks to invoke Aetna's duty to indemnify and defend Taxi pursuant to a business motor vehicle policy Aetna issued to Taxi. Aetna responds that it has no duty either to defend or to indemnify Taxi.[5] Aetna's motion for summary judgment was allowed, and a judgment dismissing the third-party complaint as to Aetna was entered under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

Under the policy's optional[6] bodily injury coverage, Aetna agrees to pay "all sums which the insured becomes legally obligated to pay as damages because of bodily injury, sustained by any person, caused by accident *and arising out of the ownership, maintenance or use* including loading and unloading, of the insured motor vehicle" (emphasis added). The policy provides that assault and battery shall be deemed an accident "unless committed by or at the direction of the insured."

---

[4]For the purposes of this appeal only, we treat all defendants as a single party, as requested by the plaintiff.

[5]The severability clause in the policy requires that the question of coverage of Taxi be viewed separately from coverage of Lawn. See *Worcester Mut. Ins. Co.* v. *Marnell,* 398 Mass. 240, 244-245 (1986). If the policy is available to Taxi, Aetna is obliged in any event to defend Taxi — quite apart from its indemnification of Taxi in the event Taxi is held liable by reason of its status as a common carrier. See *Gilmore* v. *Acme Taxi Co.,* 349 Mass. 651, 653 (1965); *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.,* 408 Mass. 393, 406 (1990).

[6]The plaintiff's claim does not rest on those provisions of the contract provided pursuant to the compulsory motor vehicle liability insurance statute. See G. L. c. 90, §§ 34A-34O.

In the proceedings in the Superior Court, it was undisputed that Taxi did not direct or commit the assault and battery, and thus the injury sustained by the victim was an "accident" within the terms of the policy. More to the point is the fact that the optional provision defining "accident" to include assault and battery has the effect of extending coverage to acts of deliberate wrongdoing. See *J. D'Amico, Inc.* v. *Boston*, 345 Mass. 218, 224 n.6 (1962) (pointing out that similar "assault and battery" provision was "probably designed" to avoid the principle of cases such as *Sontag* v. *Galer*, 279 Mass. 309, 312-313 [1932], which held that "accident" does not include deliberately wrongful conduct of the insured).

There remains the central issue of this case — whether the assault by Lawn, while an "accident," was an act "arising out of" the "ownership, maintenance or use" of Taxi's school bus. We hold that it was.

Relying principally upon *Aetna Cas. & Sur. Co.* v. *United States Fid. & Guar. Co.*, 806 F.2d 302 (1st Cir. 1986), Aetna in this case argues that the plain meaning of the policy requires that there be a causal connection between the "vehicle itself" and the injuries and that here the vehicle was "merely the incidental situs" of the victim's injuries. On facts similar to this case — rape of a child by a school bus driver — the *Aetna* court held that there was no coverage under the motor vehicle policy in that case. Citing *Lapointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 563-564 (1972), for the proposition that there must be a causal connection between the use of the automobile and the accident, the court reasoned that the policy provision with regard to the "use" of an automobile "ensures that the risk spread is the risk of *automobile* accidents, and not all accidents, or more accurately, incidents, to which an automobile can be tied, however remotely" (emphasis in original). *Aetna Cas. & Sur. Co.* v. *United States Fid. & Guar. Co.*, 806 F.2d at 303.

*Lapointe* held that the negligent installation of a propane gas tank by the driver of the vehicle delivering the tanks was *within* the "loading and unloading" coverage of the automo-

bile policy because the required causal connection "is not a question of 'proximate cause' in the ordinary sense, but is a question of interpretation of the extent of coverage intended by the words of the insurance contract." *Id.* at 564. On that basis the court concluded that the negligent installation was "a part of [the] delivery." *Ibid.* We do not read *Lapointe* as support for the conclusion reached in *Aetna.* Moreover, it does not appear that the policy in *Aetna* included the provision contained in the contract in the present case which defined "accident" to include assault and battery. We do not, for these reasons, regard *Aetna* as persuasive authority for the case before us.

Our task, as *Lapointe* emphasizes, is to interpret the coverage intended by the words of the provisions of the contract. In this case, coverage was extended to a school bus and to any assault and battery not committed by or at the direction of the insured arising out of the use of the school bus. Here, Taxi's school bus was being put to the special use of driving the victim to school when she was assaulted, and her injuries would not have occurred but for that use. The victim was using the bus in order to attend school, Taxi was using the bus to fulfil its corresponding obligation to drive her to school safely,[7] and the assault occurred within the bus while being so used by the victim and Taxi. We decline to construe this policy to include, as Aetna argues, only those cases where the motor vehicle is used as a weapon that produces personal injuries. This policy covered deliberately wrongful conduct which is "intrinsically related," see *Mullen* v. *Hartford Acc. & Indem. Co.*, 287 Mass. 262, 264 (1934), to the use of the school bus. Within the context of a policy that defines "accident" to include deliberately wrongful conduct, and within the context of a case involving a passenger in a school bus, we hold that an "accident" arises out of the use of the motor vehicle when an assault by the driver on the passenger occurs

---

[7]See *Gilmore* v. *Acme Taxi Co.*, 349 Mass. 651, 653 (1965); *Worcester Ins. Co.* v. *Fells Acres Day School, Inc.*, 408 Mass. 393, 406 (1990) (the standard of care binding on a common carrier is the "very highest, approaching that of an insurer").

within the bus and in the course of the performance of Taxi's duty to transport the passenger to an agreed destination.

Our reading of the policy has support elsewhere. The Supreme Court of Appeals of West Virginia in *Dotts* v. *Taressa J.A.*, 182 W. Va. 586, 592-593 (1990), on similar facts — sexual assault of a passenger by a driver of a bus — held for the plaintiff. "This crime was committed on the bus while the driver was using the vehicle to transport the passenger against whom the sexual offense was committed." *Id.* at 592.[8]

The West Virginia court relied on an earlier decision, *Huntington Cab Co.* v. *American Fid. & Cas. Co.*, 155 F.2d 117 (4th Cir. 1946). In that case, the court wrote, "These terms [ownership, maintenance or use] do not in our opinion require that the automobile itself produce the injury . . . . They are equally satisfied if the injury is incidental to or grows out of the relationship of carrier and passenger which in this form of transportation necessitates personal dealings and contact between the driver and the passenger in the use of the cab." *Id.* at 120. See 6C Appleman & Appleman, Insurance Law & Practice § 4468, at 639 (1979) ("Assaults committed on passengers by employees of a bus or taxicab company are usually considered as arising out of ownership, maintenance or use of the vehicle") (footnote to citations omitted). See also *Green Bus Lines, Inc.* v. *Ocean Accid. & Guar. Corp.*, 287 N.Y. 309, 314-316 (1942); *Nassau Ins. Co.* v. *Mel Jo-Jo Cab Corp.*, 102 Misc. 2d 455 (N.Y. Sup. Ct.), aff'd, 78 A.D.2d 549 (N.Y. 1980).

*Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 677 (1976), upon which Aetna also relies, is materially different from this case. There the plaintiff, a pedestrian, was deliberately shot by the insured while the insured was sitting in his

---

[8]There is authority to the contrary. See, e.g., *Tart* v. *American Natl. Fire Ins. Co.*, 576 A.2d 1353 (D.C. 1990); *Washington* v. *Hartford Acc. & Indem. Co.*, 161 Ga. App. 431 (1982); *Hicks* v. *Walker County Sch. Dist.*, 172 Ga. App. 428 (1984) (assault on handicapped child between home and school); *Lucey* v. *Harris*, 490 So. 2d 416 (La. Ct. App. 1986). See also Annot., Automobile Liability Insurance, 15 A.L.R.4th 10, 81-85 (1982).

automobile. The court held for the insurer because there was no causal relationship between the use of the motor vehicle and the injury sustained by the plaintiff. In the present case, unlike *Sabatinelli*, the insured's vehicle was being used to transport the student victim between home and school when the incident occurred. In *Sabatinelli* there was no such relationship between the plaintiff and the owner and operator of the vehicle; the victim was a total stranger whom the shooter had picked out at random and who had made no use of the vehicle and was not inside the vehicle when injured. *Sabatinelli* does not control the outcome of this case.

We conclude that the motion for summary judgment in favor of Aetna should not have been allowed. The judgment dismissing the third-party complaint as to Aetna is reversed.

*So ordered.*