46 Mass. App. Ct. 209 (1999)                    209

Lumbermens Mutual Casualty Company *v.* Y.C.N. Transportation Company.

# LUMBERMENS MUTUAL CASUALTY COMPANY *vs.* Y.C.N. TRANSPORTATION COMPANY, INC.

No. 96-P-1990.

Norfolk. February 4, 1998. - January 25, 1999.

Present: KASS, SMITH, & FLANNERY, JJ.[1]

*Insurance,* Motor vehicle insurance, Insurer's obligation to defend, Construction of policy, Coverage, Unfair act or practice. *Practice, Civil,* Retroactivity of judicial holding. *Limitations, Statute of. Waiver.*

*Roe* v. *Lawn,* 34 Mass. App. Ct. 726 (1993), *S.C.,* 418 Mass. 66 (1994), was applicable to a claim for defense and indemnification arising out of a 1984 incident of alleged sexual assault on a school bus, where the decision did not create a new, novel, or unforeshadowed rule, but, rather, expressed a logical extension of well-established principles with respect to common carrier liability. [213-214]

An insurer, by partial payment of defense costs after the statute of limitations had run for such a claim, waived the statute of limitations with respect to all such claims relative to a certain incident. [214-215]

An insurer's plausible, reasoned legal position to deny coverage to its insured did not constitute bad faith or other conduct such as would create liability under G. L. c. 93A. [215]

CIVIL ACTION commenced in the Superior Court Department on November 2, 1995.

The case was heard by *Vieri Volterra*, J., on motions for summary judgment.

*Stephen M.A. Woodworth* (*Jack D. Speranza* with him) for the plaintiff.

*Karen M. Thursby* for the defendant.

SMITH, J. Lumbermens Mutual Casualty Company (Lumbermens) brought an action in the Superior Court seeking declaratory relief against its insured, Y.C.N. Transportation Company, Inc. (YCN). At issue was whether Lumbermens had a duty to

---

[1]Justice Flannery participated in the deliberation on this case prior to his death.

reimburse YCN for its costs and fees in defending itself from 1986 through 1993 in a tort action filed against it by one Todd Paolucci and others. YCN answered and filed a counterclaim for declaratory relief, breach of contract, and violations of G. L. c. 93A.

After stipulating to certain facts, the parties filed cross motions for summary judgment. After oral argument, a Superior Court judge allowed YCN's motion for summary judgment as to "defense and indemnification for litigation of the Paolucci lawsuit," from the beginning of the lawsuit to its termination, and denied YCN's c. 93A claim. The judge denied Lumbermens' summary judgment motion. The parties agreed that judgment should enter for a certain amount but preserved all rights of appeal as to the judge's decisions on the summary judgment motions. Both parties appealed.

We summarize the stipulation of facts entered into by the parties and quote portions of the insurance policy. Lumbermens is an insurance company licensed to underwrite casualty insurance in Massachusetts. YCN is a transportation company, licensed to carry passengers.

For the period from April 9, 1984, through April 9, 1985, YCN was insured by Lumbermens' business automobile insurance policy. The policy insured YCN against any liabilities arising out of the ownership, maintenance, and use of its automobiles, subject to the terms and conditions of the policy.

Among other provisions, the policy contained the following:

> "I . . . Coverage B — Bodily Injury Liability — Other Than Statutory — (This Coverage is Optional)
>
> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sustained by any person, caused by accident and arising out of the ownership, maintenance or use, including loading and unloading, of the insured motor vehicle."

***

> "II. Defense, Settlement, Supplementary Payments. With

respect to such insurance as is afforded by this policy under coverages B, C, and division 1 of coverage A, the company shall:

"(a) have the right and duty to defend any suit against the insured seeking damages payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent, but the company may make such investigation and settlement of any claim or suit as it deems expedient . . . ."

\*\*\*

"Conditions Applicable to Part I . . . .

"8. Assault and Battery. Assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

On or about October 17, 1986, Paolucci, a minor, through his father and next friend, brought an action against YCN and others seeking damages for personal injuries arising out of an alleged incident of sexual assault and molestation he claimed to have occurred in December of 1984, while a passenger in a school bus owned and operated by YCN. The acts were allegedly committed by a monitor hired by YCN to control unruly passengers. There was no allegation in the complaint that the assault was at YCN's direction. The complaint alleged that, as a common carrier and employer of the monitor, YCN owed a duty to its passengers to provide them with safe transportation, and that it was negligent in its duty, causing Paolucci to suffer injuries.

YCN notified Lumbermens of the Paolucci action in a timely manner, and requested that Lumbermens defend and indemnify it under its business automobile insurance policy.

On February 23, 1987, Lumbermens sent a letter to YCN disclaiming any obligation to defend or indemnify YCN under the insurance policy. The basis for its decision was that the loss was "not an accident arising out of the ownership, maintenance or use of a covered motor vehicle." Lumbermens relied on *Aetna Cas. & Sur. Co.* v. *United States Fid. & Guar. Co.*, 806 F.2d 302, 303-304 (1st Cir. 1986), which held that a rape of a child by a bus driver in a school bus did not result from the ownership, maintenance, or use of the covered vehicle.

As a result of the disclaimer, YCN hired counsel to defend it in the Paolucci action. The attorney proceeded to file pleadings, conduct discovery, and file various motions, including a motion to dismiss the action, accompanied by a brief.

On July 8, 1993, this court decided *Roe* v. *Lawn*, 34 Mass. App. Ct. 726, 728-729 (1993). In *Roe,* we were called upon to interpret an insurance policy identical to the policy at issue here.[2] A passenger in a school bus was sexually assaulted by the insured's driver while transporting the passenger to school. The transportation company's insurer refused to indemnify and defend the transportation company in a civil action brought by the passenger. This court ruled that where the policy defined "accident" to include deliberately wrongful conduct, "an 'accident' arises out of the use of the motor vehicle when an assault by the driver on the passenger occurs within the bus and in the course of the performance of [the insured]'s duty to transport the passenger to an agreed destination." *Id.* at 729-730.

As a result of the *Roe* decision, YCN renewed its request that Lumbermens defend and indemnify it in the Paolucci case. Lumbermens again disclaimed any obligation to defend or indemnify YCN on the grounds that the *Roe* decision had been accepted for further appellate review by the Supreme Judicial Court. In June, 1994, the Supreme Judicial Court affirmed our decision. See *Roe* v. *Lawn,* 418 Mass. 66, 69-70 (1994). The court emphasized that the "school bus was used in the service of a common carrier of passengers and, therefore, carried an implied promise of safe passage." *Id.* at 69.

YCN again requested that Lumbermens defend and indemnify it under its insurance policy. Lumbermens then paid YCN for the costs of its defense, but only from July 8, 1993 (the date of our decision in *Roe* v. *Lawn),* through the conclusion of the underlying claim.[3] Lumbermens then instituted this action seeking a declaration that it was not required to pay the costs of the defense prior to July of 1993. YCN filed a counterclaim seeking reimbursement for all costs of defense from the beginning of the Paolucci action in 1986, to July of 1993.

------

[2]That policy defined "accident" to include an assault and battery, provided it was not done at the direction of the insured. It was undisputed in *Roe* v. *Lawn, supra* (and in this matter), that the assault was not at the direction of the insured.

[3]In September of 1994, YCN's counsel obtained a final dismissal of the Paolucci matter.

On appeal, Lumbermens claims that (1) our decision in *Roe* v. *Lawn, supra,* was not applicable to the events that occurred in 1984, (2) the statute of limitations barred YCN's claims, and (3) there were material facts in dispute, and, therefore, summary judgment should not have been granted.[4] YCN in its cross appeal contends that the motion judge committed error when he denied its c. 93A claim.

1. *Retroactive application of Roe v. Lawn.* In deciding YCN's motion for summary judgment in its favor, the motion judge ruled that *Roe* v. *Lawn* was to be retroactively applied to the events that occurred in 1984. The judge cited *Schrottman* v. *Barnicle,* 386 Mass. 627, 631 (1982), in support of his ruling. In that decision, the court stated that "[d]ecisional law is generally applied 'retroactively' to past events" because "[i]n an ideal world, courts are said to find and declare law, rather than to create new law that might surprise past actors." *Ibid.* The court noted, however, that "[n]evertheless, it is sometimes necessary to depart from the general rule of retroactivity, in order to protect the reasonable expectations of parties." *Ibid.* Here, Lumbermens argues that *Roe* v. *Lawn* should not be applied retroactively because it established a new rule of law, and Lumbermens reasonably relied on the law in existence at the time it made its decisions not to defend or indemnify YCN.

Three factors are employed in order to determine whether an exception to retroactivity is warranted. They are "(1) the extent to which the decision creates a novel and unforeshadowed rule; (2) the benefits of retroactive application in furthering the purpose of the new rule; and (3) the hardship or inequity likely to follow from retroactive application." *Schrottman* v. *Barnicle, supra* at 631-632. *McIntyre* v. *Associates Financial Servs. Co. of Mass., Inc.,* 367 Mass. 708, 712 (1975).

Contrary to Lumbermens' claim, our decision in *Roe* v. *Lawn, supra,* did not change the law that existed prior to that decision. The appellate courts have consistently ruled for many years that the standard of care binding on a common carrier is the "very highest, approaching that of an insurer." *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.,* 408 Mass. 393, 406 (1990). See *Gilmore* v. *Acme Taxi Co.,* 349 Mass. 651, 653 (1965). In addition, it has long been the rule in the Commonwealth that if a

---

[4]Lumbermens also claims that material facts precluded summary judgment in favor of YCN. Considering that the matter was submitted to the motion judge on stipulated facts, this issue is without merit.

"passenger is assaulted and insulted, through the negligence or the wilful misconduct of the carrier's servant, the carrier is necessarily responsible." *Jackson* v. *Old Colony St. Ry. Co.*, 206 Mass. 477, 485-486 (1910). Moreover, the Supreme Judicial Court in *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 563-564 (1972), and *Sabatinelli* v. *Travelers Ins. Co.*, 369 Mass. 674, 677 (1976), stated that there must be a causal connection between a motor vehicle's use and an injury for the injury to be considered to have arisen out of the ownership, maintenance, or use of the motor vehicle. Since the injury to Paolucci resulted from his use of a common carrier, we hold that our decision in *Roe* v. *Lawn*, *supra*, did not create a new, novel, or unforeshadowed rule, but rather, at most, "a logical extension of well-established principles." *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 142 (1994).[5] Accordingly, the motion judge did not commit error when he ruled that *Roe* v. *Lawn* applied to the events that occurred in December, 1984.

2. *The statute of limitations claim.* Lumbermens disclaimed any obligation to defend or indemnify YCN for the Paolucci action on February 27, 1987. If we assume that the disclaimer violated Lumbermens' contractual obligation, then YCN had until February 27, 1993, to assert its legal claims against Lumbermens arising from the violation. G. L. c. 260, § 2.[6] YCN did not bring any legal action during the six-year statutory limitations period for contract actions. Therefore, Lumbermens argues that YCN's claims for reimbursement of its legal costs prior to our decision in *Roe* v. *Lawn*, *supra*, are barred by the statute of limitations. YCN responds that because Lumbermens finally agreed to pay YCN's defense costs, although only for the time period after July 8, 1993, it waived the statute of limitations.

---

[5]Lumbermens argued that it reasonably relied on the First Circuit decision in *Aetna Cas. & Sur. Co.* v. *United States Fid. & Guar. Co.*, *supra*, as stating the existing law in the Commonwealth at the time that it denied coverage.

However, a close reading of that decision demonstrates that the court did not consider the long line of Massachusetts decisions spelling out the obligations of common carriers. Rather, the court based its decision on *Sabatinelli* v. *Travelers Ins. Co.*, *supra*, which involved the use of a private automobile and not a common carrier, as here. Thus, the facts in *Sabatinelli* were markedly different from the facts in *Aetna Cas. & Sur. Co.*, a difference that Lumbermens should, perhaps, have noticed. See *Roe* v. *Lawn*, 418 Mass. at 69.

[6]Although the statute of limitations issue was briefed and argued before the motion judge, his memorandum of decision and order does not address the issue.

By partial payment, a party may waive the statute of limitations even when it has run in its favor. *Alpert* v. *Radner*, 293 Mass. 109, 111 (1936). Here, Lumbermens paid YCN in 1994 for the cost of its defense (after the statute of limitations had run), but only from July 8, 1993, the date that our decision in *Roe* v. *Lawn*, *supra*, was announced. In these circumstances, we rule that Lumbermens waived the statute of limitations as to YCN's legal costs prior to July 8, 1993.

3. *YCN's appeal on its c. 93A claim.* The motion judge ruled that Lumbermens' denial of coverage to YCN prior to July 8, 1993, was not done in bad faith or with extortionate tactics. YCN appealed from the judge's ruling.

We agree with the motion judge. Liability under c. 93A "does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous." *Pediatricians, Inc.* v. *Provident Life & Acc. Ins. Co.*, 965 F.2d 1164, 1173 (1st Cir. 1992). The record demonstrates that Lumbermens' decision to deny coverage was based on nothing more than "[a] plausible, reasoned legal position that . . . ultimately turn[ed] out to be mistaken." *Guity* v. *Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343 (1994).

4. *Conclusion.* We affirm the agreement for judgment entered on the Superior Court docket on October 31, 1996.

*So ordered.*