NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11561


BARRON CHIROPRACTIC & REHABILITATION, P.C.  vs.  NORFOLK &
DEDHAM GROUP.


Norfolk.    May 5, 2014. - October 15, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]


Insurance, Motor vehicle personal injury protection benefits,
     Unfair act or practice.  Contract, Insurance.  Practice,
     Civil, Summary judgment, Attorney's fees.  Consumer
     Protection Act, Insurance.



Civil action commenced in the Dedham Division of the
District Court Department on November 25, 2009.

The case was heard by James J. McGovern, J., on a motion
for summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.


Francis A. Gaimari (Robert N. Fireman & Stephen B. Byers
with him) for the plaintiff.
Joseph R. Ciollo (Michael L. Snyder with him) for the
defendant.
E. Michael Sloman, for Automobile Insurers Bureau, amicus
curiae, submitted a brief.

---

[1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

<u>Christopher M. Moutain</u>, for American Insurance Association & others, amici curiae, submitted a brief.

LENK, J.  The personal injury protection (PIP) provision of the automobile insurance statute permits an unpaid party to bring an action for breach of contract against an automobile insurer if the latter has not paid PIP benefits for more than thirty days after those benefits became due and payable.  G. L. c. 90, § 34M, fourth par.  If the unpaid party receives a judgment for any amount due and payable by the insurer, it also may recover its costs and reasonable attorney's fees.  The primary question before us is whether an unpaid party who has brought suit and thereafter refused the insurer's tender of amounts due and payable, made prior to the entry of judgment, may proceed with the suit and, if successful, obtain a judgment for those amounts as well as its costs and attorney's fees.  We conclude that it may proceed with the action under G. L. c. 90, § 34M.

1.  <u>Background</u>.  The plaintiff, Barron Chiropractic & Rehabilitation, P.C. (Barron), provided chiropractic services to Nicole Jean-Pierre following her automobile accident on August 20, 2008.  Jean-Pierre was injured while driving a vehicle insured by the defendant Norfolk & Dedham Group (Norfolk) pursuant to G. L. c. 90, § 34A, which requires

compulsory motor vehicle liability insurance, including PIP

benefits.[2]  See G. L. c. 90, §§ 34A, 34M.

Norfolk received notice of the accident on August 22, 2008,

and, on October 10, 2008, received Jean-Pierre's application for

PIP benefits.[3]  Shortly thereafter, pursuant to its contractual

right under the terms of Jean-Pierre's insurance policy, as well

as language in the PIP provision, Norfolk requested that Jean-

Pierre undergo an independent medical examination (IME)[4] by Kevin

Morgan, a licensed chiropractor of its selection.  On

October 27, 2008, Morgan submitted his IME report to Norfolk.

The report stated that, while treatments up to the date of the

---

[2] Personal injury protection (PIP) benefits consist of "all reasonable expenses incurred within two years from the date of [the] accident for necessary medical, surgical, x-ray, and dental services," and, for employed persons, "any amounts actually lost by reason of inability to work and earn wages or salary or their equivalent."  G. L. c. 90, § 34A.

[3] General Laws c. 90, § 34M, third par., states that a "[c]laim for benefits due under the provisions of personal injury protection or from the insurer assigned shall be presented to the company providing such benefits as soon as practicable after the accident occurs from which such claim arises, and in every case, within at least two years from the date of the accident, and shall include a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due and payable."

[4] The PIP provision provides that the "insured person shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due."  G. L. c. 90, § 34M, third par.

IME had been appropriate, Jean-Pierre had reached "maximum therapeutic benefit."  Based on this report, Norfolk concluded that treatments Barron provided Jean-Pierre after the date of the IME were unreasonable and unnecessary.  A few days thereafter, Norfolk provided Jean-Pierre's counsel with a copy of the report.

Approximately nine months later, on July 27, 2009, Norfolk received a response to Morgan's IME report from Scott Hayden, a licensed chiropractor and a Barron employee.  Hayden disagreed with Morgan's conclusion that Jean-Pierre had reached a medical end result at the time of the IME, stating instead that proper rehabilitation had required nine treatment visits after that date.  On August 17, 2009, Morgan sent Norfolk an addendum to his initial IME report, indicating that Hayden's rebuttal had not altered his assessment of Jean-Pierre's care, and stating further that subsequent care offered by Barron, while "within acceptable care guidelines" and "reasonable and necessary," appeared aimed largely at preexisting conditions.

As an additional component of its investigation of Jean-Pierre's claim, Norfolk sent Barron's billing statements to BME Gateway (BME), an independent third party, for financial analysis.  BME uses a computer database to determine whether a medical provider has sought fees that are usual, customary, and reasonable within a particular geographic region.

Barron submitted a bill to Norfolk seeking $3,940 in payment for its treatment of Jean-Pierre. Upon review, Norfolk concluded that it was not liable for the entirety of this requested amount. Based on BME's assessment, Norfolk deducted $64.05 from Barron's bill, allowing only $3,875.95 on that ground. In reliance on Morgan's IME report, Norfolk also limited its payment to service provided prior to the date of the IME, declining to pay a further $1,480 in charges for treatment occurring after October 27, 2008. In total, Norfolk determined that it was liable for only $2,395.95 of Barron's submitted fees, resulting in a disputed amount of $1,544.05.

On November 25, 2009, more than one year after Jean-Pierre had submitted her application for PIP benefits, Barron filed a complaint in the District Court.[5] Barron sought payment of $1,544.05, plus interest, attorney's fees, and costs pursuant to G. L. c. 90, § 34M; multiple damages and attorney's fees pursuant to G. L. c. 93A, § 11, for alleged unfair or deceptive practices regarding Jean-Pierre's insurance claim; and multiple damages and attorney's fees pursuant to G. L. c. 93A, §§ 9 and

---

[5] We have construed the term "unpaid party" in G. L. c. 90, § 34M, to include, as here, "an unpaid medical provider who treats an insured." Boehm v. Premier Ins. Co., 446 Mass. 689, 691 (2006). The medical provider may thus "step into the shoes of the insured and bring an action in contract to recover PIP benefits." Id.

11, for violations of G. L. c. 176D, § 3 (9), which prohibits insurers from engaging in unfair settlement practices.

At some point prior to trial, Norfolk learned that Morgan's fee to appear as an expert witness was $500 per hour, with a minimum of five hours to be billed.[6] Although still maintaining that it did not owe Barron any additional payments, Norfolk determined that its anticipated litigation costs would exceed the amount of the disputed medical fees by a substantial sum. Accordingly, on September 28, 2010, six days prior to the second scheduled trial date,[7] Norfolk sent Barron a check for $1,544.05 with an attached check stub that stated "full and final settlement for Nicole Jean Pierre." Norfolk included a letter stating that its payment was made pursuant to Fascione v. CNA Ins. Cos., 435 Mass. 88 (2001) (Fascione); the letter requested that Barron sign an acknowledgment of the receipt of final payment and file a stipulation of dismissal in the District Court as to its claims under the PIP provision. On October 12, 2010, Barron's counsel returned the check to Norfolk's counsel with a letter stating, "Your client's offer of settlement is rejected."

---

[6] In its pretrial memorandum, dated May 11, 2010, Norfolk indicated that Morgan was expected to testify as to the substance of his independent medical examination and report.

[7] The trial initially was scheduled for August 3, 2010, but was rescheduled at the parties' request for October 4, 2010.

Norfolk then filed a motion for summary judgment as to both the G. L. c. 90, § 34M, and G. L. c. 93A claims, supported by an affidavit from its claims supervisor, as well as by relevant medical records and BME's financial analysis. Barron filed an opposition, but neither alleged that any issues of material fact remained in dispute, nor included any counter affidavits or other documents indicating any factual dispute. A District Court judge granted Norfolk's motion for summary judgment, and, on Barron's appeal, the Appellate Division of the District Court affirmed the judgment. Barron filed a notice of appeal in the Appeals Court, and we granted Norfolk's subsequent application for direct appellate review.

2. Discussion. Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). If the moving party, in its pleadings and supporting documentation pursuant to Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002), asserts the absence of any triable issue, the nonmoving party must respond and make specific allegations sufficient to establish a genuine issue of material fact. Drakopoulos v. U.S. Bank Nat'l Ass'n, 465 Mass. 775, 777-778 (2013). Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Bare assertions made in the nonmoving party's opposition will not defeat a motion for

summary judgment.  O'Rourke v. Hunter, 446 Mass. 814, 821 (2006).  Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974) ("A party may not rest upon the mere allegations or denials of his pleading").  We review the disposition of a motion for summary judgment de novo.  Miller v. Cotter, 448 Mass. 671, 676 (2007).

Barron contends that summary judgment was inappropriate as to its claim under § 34M.  Because Barron declined Norfolk's late tender, made on the eve of trial, it remained an "unpaid party" pursuant to § 34M, and was entitled to seek a judgment for benefits due and payable.  Relying on Fascione, supra, Norfolk maintains that it was entitled to summary judgment once it tendered a complete payment of benefits owed, notwithstanding Barron's rejection of that tender.  Because we conclude, for the reasons set forth below, that Barron was permitted to refuse Norfolk's tender and pursue its suit, the order granting Norfolk's motion for summary judgment on the G. L. c. 90, § 34M, claim must be vacated and the case remanded for trial.

Barron also contests the entry of summary judgment for Norfolk as to the G. L. c. 93A claims.  In its opposition to Norfolk's motion, however, Barron did not allege the existence of any factual disputes and submitted no documentation that might reveal such disputes.  See Mass. R. Civ. P. 56 (e) ("[A]n adverse party [to a motion for summary judgment] . . . must set forth specific facts [in its affidavits and pleadings] showing

that there is a genuine issue for trial").  Accordingly, we affirm the order granting Norfolk's motion for summary judgment on the G. L. c. 93A claims.

a.  Claim under G. L. c. 90, § 34M.  The PIP provision, G. L. c. 90, § 34M, specifies that an "unpaid party," that is, a claimant whose PIP benefits remain unpaid for more than thirty days after those benefits become "due and payable," shall have the right to bring an action in contract against an insurer to recover those benefits, as well as attorney's fees and costs should the unpaid party prevail.[8]  Under common-law principles of contract, which we have deemed applicable to "action[s] in contract" under § 34M, see Boehm v. Premier Ins. Co., 446 Mass. 689, 691 (2006) (Boehm), a plaintiff may reject a defendant's disputed tender of payment, made after the date set for payment has expired, and litigate its breach of contract claim to

---

[8] Specifically, G. L. c. 90, § 34M, fourth par., states, in relevant part:

"Personal injury protection benefits . . . shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred . . . .  In any case where benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment and shall therefore have a right to commence an action in contract for payment of amounts therein determined to be due in accordance with the provisions of this chapter . . . .  If the unpaid party recovers a judgment for any amount due and payable by the insurer, the court shall assess against the insurer in addition thereto costs and reasonable attorney's fees."

completion.  Here, Norfolk attempted to tender the disputed $1,544.05 nearly one year after Barron had commenced its contract action, and just six days prior to trial.  We conclude that Barron properly could reject this tender, forgo the certainty it offered, and opt instead to pursue recovery not only of the disputed unpaid PIP benefits, but also of the attorney's fees and costs provided by the PIP provision.

To construe this provision, we "look first to the text of the statute."  Boehm, supra at 690.  General Laws c. 90, § 34M, fourth par., provides that suits brought to recover PIP benefits shall sound in contract, noting that an unpaid claimant "shall be deemed a party to a contract with the insurer" and may bring an "action in contract" to obtain any benefits held to be due and payable.  Given these unambiguous statutory references to actions in contract, we have held that a § 34M suit brought to procure unpaid PIP benefits is governed generally by ordinary contract principles.[9]  In Boehm, supra at 689, we considered whether G. L. c. 90, § 34M, conferred the right to a jury trial.  In concluding that PIP claimants were so entitled, we emphasized that an unpaid claimant "has a 'right' to seek recovery through

_____

[9] Barron contends also that it was entitled to reject Norfolk's efforts at late tender pursuant to the tender statute, G. L. c. 232A, § 1.  Since we conclude that common-law contract principles govern here, we do not address this argument.  See Fascione v. CNA Ins. Cos., 435 Mass. 88, 90 n.1 (2001).

'an action in contract,'" deeming this text "determinative of the issue at bar." Boehm, supra at 691, quoting G. L. c. 90, § 34M, fourth par. At common law, we noted, parties to contract actions "enjoyed the right to a jury trial," and "the Legislature is presumed 'to know the preexisting law and the decisions of this court.'" Boehm, supra, quoting Selectmen of Topsfield v. State Racing Comm'n, 324 Mass. 309, 313 (1949).

> "Had the Legislature intended to treat contract actions brought pursuant to § 34M, fourth par., differently from the ordinary contract action, it could have said so explicitly as it did in the very next paragraph, which directs insurers to resolve disagreements concerning subrogation through arbitration."

Boehm, supra. "That § 34M does not explicitly refer to the right to a jury trial," we concluded, "is of no consequence." Boehm, supra at 691-692. The Legislature's explicit determination that an unpaid PIP claimant may file a contract suit "carries with it the principle[s]" of the common law of contracts. Id. at 692. See Commonwealth v. Burke, 392 Mass. 688, 690 (1984) (statute must be construed as consistent with common law absent clear contrary legislative intent).

Principles of contract law are "dispositive" of the present case, just as they were of the question addressed in Boehm. At common law, tender of a sum owed under a contract is valid only when made prior to the parties' agreed-upon date for payment,

even if that tender is for the entire disputed sum.[10]  There can "be no 'tender' in the legal meaning of the word if the offer was made after the day fixed for payment had passed and the contract to pay had been broken."  Levin v. Wall, 290 Mass. 423, 426 (1935).  See City Bank v. Cutter, 3 Pick. 414, 418 (1826) ("the plea of tender is bad, the tender not having been made until the day after the debt became due against the defendants"); 17B C.J.S. Contracts, Tender of Performance § 729 (2011) ("In order to be valid, a tender of payment on a contract must be timely . . ."); M.G. Perlin & S.H. Blum, Procedural Forms Annotated § 54:230, Tender (6th ed. 2009) (tender invalid if made after payment date).

A party who receives an invalid late tender is not obliged to accept it.  See Levin v. Wall, supra at 427 (plaintiff permitted to reject tender made on first day of trial for breach of contract and pursue his claim to judgment); Davis v. Harrington, 160 Mass. 278, 280 (1894) (plaintiff who accepted complete tender after filing breach of contract suit "could have preserved his right to interest by way of damages, and also to

---

[10] Norfolk never conceded its liability for $1,544.05 of Barron's requested fees.  Nevertheless, in light of the litigation costs it might incur should the case proceed to trial, Norfolk contends that it made a business decision to tender this disputed amount.  In conjunction with payments already made, the tendered payment, if accepted, would have compensated Barron for all of the PIP benefits it sought, not including interest.

costs, by declining to accept the payment"); Loitherstein v. International Business Machs. Corp., 11 Mass. App. Ct. 91, 92 (1980) (defendant's late tender, which plaintiff rejected, did not extinguish plaintiff's claim for damages due to breach). Where a defendant attempts to tender payment after it has already breached the contract, "the rights of the parties depend, not on a tender, but on the acceptance of a payment which discharged the cause of action." Davis v. Harrington, supra at 280. Even if a plaintiff receives a tender of payment in full for a disputed sum, as here, "an underlying debt may not be discharged unless payment is accepted." First Nat'l Bank v. Commonwealth, 391 Mass. 321, 326 (1984). Late tender alone therefore does not preclude a plaintiff from filing a claim for breach or pursuing a then-pending suit.[11]

Here, Norfolk's tender of $1,544.05 was made past the deadline set forth in the PIP provision. General Laws c. 90,

---

[11] To be sure, a plaintiff is also entitled to accept and thereby validate an otherwise improper late tender. Such acceptance removes the "foundation of [a potential contract] suit" and necessitates the dismissal of a suit already commenced. Davis v. Harrington, 160 Mass. 278, 280 (1894) (plaintiff who accepted tender made after suit had commenced not entitled to damages in form of interest and costs). See Hamlen v. Rednalloh Co., 291 Mass. 119, 126-127 (1935) (plaintiff could not recover costs after accepting late payment in full with interest); Paul Revere Trust Co. v. Castle, 231 Mass. 129, 132 (1918) ("when the plaintiff accepted the principal in full payment the right to recover the interest . . . was extinguished").

§ 34M, establishes the date of breach relevant to unpaid PIP benefits, providing that, where "benefits due and payable remain unpaid for more than thirty days, any unpaid party . . . shall therefore have a right to commence an action in contract." After the expiration of that thirty-day period, Barron had yet to receive $1,544.05 in medical fees which it maintains were "due and payable." Norfolk sent its check for that amount to Barron on September 28, 2010, nearly two years after Jean-Pierre first notified Norfolk of her claim for PIP benefits, and nearly one year after Barron filed suit seeking payment of the disputed balance. The "day fixed for payment had passed," Levin v. Wall, supra at 426, and, after that point, "a tender cannot be effectual to bar the action for damages." Suffolk Bank v. Worcester Bank, 5 Pick. 106, 108 (1827) (where there had been no tender at time contract suit commenced, "the tender afterwards cannot avail in defence of the action"). Norfolk's tender therefore was improper under principles of common law, and Barron was permitted to reject it and seek an award of the PIP benefits it maintained were "due and payable," as well as its attorney's fees, costs, and interest.

Norfolk maintains nonetheless that, under our decision in Fascione, its tender of payment was sufficient to discharge all of its obligations to Barron, and that the allowance of its

motion for summary judgment was proper.[12] This argument misapprehends the relevance of Fascione to the circumstances here. In Fascione, supra at 89, an insurer inadvertently failed to pay the full amount of a PIP claimant's benefits, and tendered the remaining payment after the claimant had filed suit under G. L. c. 90, § 34M, to recover the amounts due. We held that the claimant, who had accepted the insurer's tender and was fully compensated for her medical expenses, was not thereafter permitted to seek costs, attorney's fees, and interest under § 34M. Fascione, supra at 89-90, 92-94. A claimant may only receive costs and attorney's fees upon obtaining "a judgment for any amount due and payable." Id. at 92. The phrase "any amount

---

[12] The parties' disagreement as to the import of Fascione, supra, reflects differences in decisions of the Appellate Division of the District Court. Certain of those decisions have interpreted Fascione to mean that an insurer's tender of a full PIP payment, made after a claimant filed suit but before judgment has entered, will extinguish the G. L. c. 90, § 34M, claim even where the claimant rejects such tender. See, e.g., Essex Chiropractic Office, LLC vs. Plymouth Rock Assur. Corp., Mass. Dist. Ct. App. Div., No. 08-ADMS-10032 (Dec. 17, 2008) ("it would be an absurd result if a medical provider were able to defeat the holding of Fascione merely by rejecting the tender of full payment of a PIP claim"); Kratzer vs. Liberty Mut. Ins. Co., Mass. Dist. Ct. App. Div., No. 9834 (May 28, 2003).

Other Appellate Division decisions, however, have concluded that "[n]othing in Fascione dictates that a tender of the balance due under the § 34M claim must necessarily stop that part of the litigation in its tracks and require a judgment of zero damages." Metro West Med. Assocs., Inc. vs. Amica Mut. Ins. Co., Mass. Dist. Ct. App. Div., No. 10-ADMS-10009 (June 29, 2010). See Olympic Physical Therapy vs. ELCO Admin. Servs., Mass. Dist. Ct. App. Div., 10-ADMS-10017 (Aug. 17, 2010).

due and payable," we concluded, encompassed only PIP benefits themselves, and did not include interest. Id. at 92-93. Because the claimant had accepted the insurer's full payment of her PIP expenses, she could not recover a judgment for costs and attorney's fees. Id. at 94.

Fascione affords no basis upon which to conclude that a PIP claimant, having filed an action in contract against an insurer for its delayed payment of benefits, is obliged to accept late tender and thus relinquish its suit. We held in that case that G. L. c. 90, § 34M, provides no further remedy to a claimant who has accepted an insurer's late, but complete, tender of payment; this in no way was intended to suggest that a claimant may not reject such tender in an effort to obtain the attorney's fees and costs mandated by § 34M. Indeed, our analysis relied on the claimant's acceptance of the insurer's reimbursement, which removed any basis for a judgment in favor of the claimant by compensating her for all "amount[s] due and payable."

Moreover, to interpret Fascione as Norfolk suggests would contravene the fee-shifting provision of G. L. c. 90, § 34M, thereby enabling insurers to delay their payment of benefits without consequence. The Legislature was "aware of the long delays in getting financial aid to the injured person" when it enacted the PIP provision. Pinnick v. Cleary, 360 Mass. 1, 20 (1971). Accordingly, the thirty-day payment period, in

conjunction with the provision for attorney's fees and costs, together protect "the right and need of all accident victims to simple and speedy justice." Id. at 21. Since a cause of action lies against an insurer who fails to pay PIP benefits within the statutory period, and since the insurer will be liable for attorney's fees and costs if a claimant obtains a judgment for the unpaid amount, G. L. c. 90, § 34M, encourages the prompt payment of benefits.[13]

But these incentives would diminish if an insurer could disregard the thirty-day deadline yet nevertheless evade liability for attorney's fees and costs by tendering benefits at will after a suit has commenced. Under Norfolk's approach, the timeframe for prompt payment established by the Legislature would have little effect, since an insurer's delay would engender no more serious consequence than the payment of the very benefits sought from it at the outset. See Insurance Rating Bd. v. Commissioner of Ins., 356 Mass. 184, 189 (1969)

---

[13] This, in turn, is intended to lessen the expense of compulsory automobile insurance for all Massachusetts drivers, by reducing the number of claims that insurers will choose to litigate. See Fascione, supra at 94, citing Pinnick v. Cleary, 360 Mass. 1, 16-20 (1971) ("[T]he main objectives of the automobile insurance law, of which § 34M is a critical part, were to reduce the amount of motor vehicle tort litigation, control the costs of automobile insurance, and ensure prompt payment of claimants' medical and out-of-pocket expenses"). See also Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 115 (1999).

("An intention to enact a barren and ineffective provision is not lightly to be imputed to the Legislature").

The provision for payment of attorney's fees and costs would be similarly toothless. When an insurer's payment of PIP benefits, as here, is made on the eve of trial, a claimant may well have incurred substantial expenses. If, as Norfolk suggests, a claimant were required to accept such late tender, she would be bound to forgo the recovery of those expenses whenever an insurer offered belated reimbursement of a disputed sum. See Pine v. Rust, 404 Mass. 411, 416 (1989) ("If an offer of the statutory minimum amount of damages were all that could be expected by plaintiffs, there would be no need for provision in the law for the award of attorney's fees"). Moreover, a contract suit under § 34M is only necessary, in the first instance, if an insurer fails to reimburse a claimant by the statutory deadline. Under Norfolk's approach, far from reducing the amount of litigation, § 34M would provide incentives for insurers to delay payment until their insureds filed suit to collect amounts owed; on a date of its choosing, an insurer then unilaterally could terminate litigation prompted only by its own delay. "[E]quity will not permit" such a result, which would allow an insurer to "defeat a remedy which except for his misconduct would not be available." Lamb v. Rent Control Bd. of

Cambridge, 17 Mass. App. Ct. 1038, 1039 (1984), quoting Deitrick
v. Greaney, 309 U.S. 190, 196 (1940).

In sum, an insurer's late tender of PIP benefits, made
after a claimant has filed suit and which the claimant declines
to accept, does not entitle an insurer to summary judgment.  To
be sure, an insurer may opt to tender payment of outstanding PIP
benefits after the filing of a suit, and, if a claimant accepts
that tender, the action under G. L. c. 90, § 34M, will be
extinguished.  See Fascione, supra at 91.  But the mere tender
of such late payment will not, in itself, innoculate an insurer
against liability for attorney's fees and costs if the claimant
opts to refuse tender and subsequently obtains a judgment for
PIP benefits.  Here, because Barron rejected Norfolk's tendered
check for $1,544.05, it remained an "unpaid party," and
Norfolk's motion for summary judgment on its G. L. c. 90, § 34M,
claim should have been denied.

b.  Claims under G. L. c. 93A, §§ 9, 11.  Barron contends
also that the judge erred in allowing Norfolk's motion for
summary judgment on the G. L. c. 93A claims.[14]  To determine
whether a business practice is unfair under G. L. c. 93A, § 11,

---

[14] In its complaint, Barron set forth two separate claims
for violations of G. L. c. 93A, one based on Norfolk's asserted
failure to adhere to G. L. c. 90, § 34M, and one stemming from
Norfolk's purported unfair claim settlement practices as defined
by G. L. c. 176D, § 3 (9) (b), (d), (e), (f), (g), and (n).  As
did the Appellate Division, we assess both claims together.

we assess "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).

In the circumstances of this case, there was no error in allowing Norfolk's motion for summary judgment on the G. L. c. 93A claims. Norfolk's motion stated that there were no genuine issues of material fact as to the propriety of Norfolk's dealings under G. L. c. 93A, and indicated that Norfolk acted, at all times, in accordance with appropriate business judgments. In support of its motion, Norfolk included a detailed affidavit by one of its senior claims supervisors outlining its conduct in handling Jean-Pierre's claim for PIP benefits. According to the affidavit, Norfolk relied in good faith on the IME report in deciding to limit payment to dates of medical service prior to October 27, 2008, and relied similarly on BME's fee analysis in reducing Barron's submitted bills by $64.05. See Duclersaint v. Federal Nat'l Mtge. Ass'n, 427 Mass. 809, 814 (1998); Lumbermens Mut. Cas. Co. v. Y.C.N. Transp. Co., 46 Mass. App. Ct. 209, 215 (1999).

In its opposition to Norfolk's motion for summary judgment, Barron did not allege that material facts were in dispute, stating only that "[n]othing in Norfolk's submission demonstrates that no genuine issue of fact remains on the G. L. c. 93A claims.  Thus, the plaintiff has no burden of rebuttal." Nor did the opposition include counter affidavits or any other countervailing documentation that might have demonstrated the existence of genuine issues of material fact.  Although Barron had alluded in its initial complaint to Norfolk's purported bad faith,  a party opposing a motion for summary judgment may not "simply rest on his pleadings."  Community Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976). See LaLonde v. Eissner, 405 Mass. 207, 209-210 (1989) (granting summary judgment for defendant where plaintiffs did not dispute any relevant material fact). Cf. Rule 9A(a)(2) of the Rules of the Superior Court (2014) ("Affidavits and other documents setting forth or offering evidence of facts on which the opposition is based shall be served with the memorandum in opposition [to a motion for summary judgment]").  Having failed to "set forth specific facts showing that there is a genuine issue for trial," Mass. R. Civ. P. 56 (e), Barron was not entitled to trial on its G. L. c. 93A claims.

3.  Conclusion.  The order allowing judgment for Norfolk on count 1, the G. L. c. 90, § 34M, claim, is vacated and set

aside, and the matter is remanded to the District Court for further proceedings on that claim.  The entry of judgment for Norfolk on counts two and three, the claims under G. L. c. 93A, is affirmed.

<u>So ordered</u>.