The plaintiff, Richard A. Campos, appeals from a Superior Court order allowing the Massachusetts Bay Transportation Authority's (MBTA's) motion for summary judgment on his complaint, alleging that the MBTA discriminated against him on the basis of his race and color in violation of G. L. c. 151B, § 4, when it placed him on administrative leave for approximately six months and suspended him for ten days.[2] We affirm.
Background. We briefly summarize the material facts in the light most favorable to the plaintiff, the nonmoving party, reserving additional facts for later discussion. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 (2005). The plaintiff, who is of Hispanic descent, joined the MBTA police department (the department) as a patrol officer in 1996, rose through the ranks, and eventually became a lieutenant in 2008 after receiving the highest score on the promotional examination.[3]
While working as a lieutenant for the department, the plaintiff supplemented his income by working police detail assignments (details), which consist of work outside of an officer's normal duties often paid by the third party for whom the work is being done. To get paid for a detail, an officer must submit both (i) a hard copy detail card, attesting to the start and finish times of the detail as well as the actual hours worked, and (ii) a computerized version of this same information in the department's assignment tracking system (Larimore System). One such detail at the Ruggles MBTA station (Ruggles detail) is paid by Northeastern University police department (Northeastern).
In early March, 2013, Northeastern contacted the department to complain that it had been charged for a February 15, 2013, Ruggles detail when no department officer had worked the detail; instead, a Northeastern officer had performed the detail. Although the plaintiff had not worked the detail, the Larimore System listed the plaintiff as having worked this detail, and the plaintiff had submitted a signed detail card, confirming that he had worked that detail. In response to Northeastern's complaint, Robert Fitzsimmons, the deputy chief in charge of the department's internal affairs unit, commenced an investigation of the plaintiff's detail assignments.
During the investigation, the plaintiff admitted that he had not worked the February 15 detail. He explained that, on the evening of the detail, he had asked another department lieutenant to remove him from the Larimore System and to contact Northeastern to confirm the removal. The plaintiff left for a one-week vacation the next day, and when he returned, he submitted several detail cards for payment. When he checked the Larimore System, he saw that the February 15 detail was still listed as his assignment, and mistakenly submitted for payment of the detail, forgetting that he had not actually worked that evening.
In addition to the February, 2013, Ruggles detail, Fitzsimmons discovered that the plaintiff had worked two overlapping detail assignments in separate locations in December, 2012, and had received double payment for the time.[4] Fitzsimmons reported the status of his investigation to the department chief, Paul MacMillan, who placed the plaintiff on paid administrative leave pending the completion of the investigation.[5] As a result, although the plaintiff was paid his full salary, he was no longer eligible to supplement his pay by working details.
In view of the February, 2013, and the December, 2012, incidents, Fitzsimmons expanded his investigation of the plaintiff's detail assignments, finding eleven other instances when, according to "Fast Pass" transponder records, the plaintiff's vehicle was on the road during times where his detail submissions reported that he was still at the Ruggles detail.
In June, 2013, Fitzsimmons issued a written report to the chief, concluding that the plaintiff had, among other things, acted with fraudulent and larcenous intent by submitting for and receiving payment for details when he knew he was not present, and violated the department rules prohibiting officers from violating criminal laws. Although Fitzsimmons had received the plaintiff's explanation for the February 15 Ruggles detail, he did not ask the plaintiff to explain either the December, 2012, violation or the eleven other instances of discrepancies regarding the plaintiff's Ruggles details.
After reviewing the report, the chief convened a disciplinary hearing (just cause hearing), at which the plaintiff was represented by counsel. Fitzsimmons testified regarding his investigation. The plaintiff had the opportunity to testify and present evidence, but chose not to do so. In particular, the plaintiff offered no explanation for either the December, 2012, violation or for the eleven instances where he left the Ruggles detail early but was paid for the full time period.
The hearing officer concluded that the plaintiff had knowingly submitted false claims for payment in connection with the eleven occasions where he left the Ruggles detail early, and for the December, 2012, overlapping shifts, but that he did not knowingly make false time submissions in connection with the February 15, 2013, Ruggles detail. The chief reviewed these conclusions, and determined that the plaintiff had committed serious misconduct. After negotiations with plaintiff's counsel, the chief suspended the plaintiff for ten days without pay.
Discussion. We review a ruling on a motion for summary judgment de novo to determine whether the moving party has established that, viewing the evidence in the light most favorable to the opposing party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016), quoting from Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474 (2013). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). To survive summary judgment on a claim of employment discrimination pursuant to G. L. c. 151B, a plaintiff-employee must produce evidence from which a reasonable jury could infer "four elements: membership in a protected class, harm, discriminatory animus, and causation." Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016). Because there is rarely direct evidence of discriminatory animus, a plaintiff may establish these elements by producing "indirect or circumstantial evidence using the familiar three-stage, burden-shifting paradigm" first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).[7] Bulwer, supra at 680-681.
At the first stage, the plaintiff must produce evidence of a prima facie case of discrimination-that is, evidence that would allow a reasonable jury to infer that the plaintiff: (i) is a member of protected class; (ii) performed the job adequately; and (iii) suffered an adverse employment action. Ibid. Here, we assume without deciding that the plaintiff's evidence supports a prima facie case. In the second stage, the burden of production shifts to the employer to articulate a nondiscriminatory rationale for the adverse employment decision. Ibid. The MBTA has articulated a legitimate, nondiscriminatory reason for the adverse employment action-namely, that (as set forth supra ) he violated the department policies by submitting for and receiving payment for work that he did not perform.
In the third stage, the burden shifts back to the employee to produce evidence that would allow a reasonable jury to infer that the employer's stated rationale was not the actual reason, and as such, was pretext. Ibid. As supposed evidence of pretext, the plaintiff points to Fitzsimmons's failure to interview the plaintiff (beyond seeking his explanation for the February, 2013, Ruggles detail) and others regarding the numerous alleged policy violations. However, an incomplete or cursory investigation is not a basis for a finding of pretext. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128, 134 (1997). Moreover, the Fitzsimmons investigation was not the end of the MBTA's efforts to investigate the plaintiff's misconduct. To the contrary, the plaintiff was given a full opportunity to provide exculpatory information during the just cause hearing, was represented by counsel, and affirmatively chose not to explain his detail assignment submissions.[8] Any purported failure on Fitzsimmons's part to proactively seek clarification from the plaintiff-information the plaintiff failed to provide when given the chance-is not evidence that the MBTA's rationale was a pretext.
The plaintiff also alleges that pretext can be found on the basis of the supposed disparate treatment of the plaintiff in comparison to a white officer. The white officer here was not similarly situated to the plaintiff. See id. at 130-133. This officer, unlike the plaintiff, neither made false representations nor double billed a third party regarding detail assignments. Furthermore, the white officer was disciplined by a different supervisor than the plaintiff. See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st. Cir. 1999). In these circumstances, the treatment of the white officer was not evidence that the MBTA's rationale regarding the plaintiff's discipline was pretext.[9]
Finally, the plaintiff argues that pretext can be inferred based on historic instances of the MBTA's treatment towards him prior to the investigation at issue in this case. We disagree in light of the time span between the plaintiff's placement on administrative leave and these prior events, and the fact that those events involved entirely different factual contexts and concerned decisions made by MBTA employees not involved in the current allegations. See Morrison v. Carleton Woolen Mills, Inc., 108 F.3d 429, 439 (1st Cir. 1997) (time-barred conduct considered only if "legally relevant" to the conduct about which the employee timely complains).
Judgment affirmed.

The motion judge also ordered the entry of summary judgment on the plaintiff's employment retaliation claim pursuant to G. L. c. 151B, § 4(4). As the plaintiff raises no challenges to that portion of the motion judge's order, the issue is waived. See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 n.1 (2005).

At the time, he was the highest ranking Hispanic officer in the department.

This is referred to as a "double dipping" violation.

The chief stated that placing officers under investigation on paid administrative leave is a standard department procedure.

The plaintiff's argument, citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000), that, at summary judgment, the judge cannot consider the movant's undisputed evidence is directly contradicted by well-established Massachusetts precedent. See Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, 469 Mass. 800, 804 (2014) (citations omitted). Indeed, Federal courts of appeals addressing a similar argument have soundly rejected it. LaFrenier v. Kinirey, 550 F.3d 166, 168-169 (1st Cir. 2008) (citing cases from the United States Court of Appeals for the First, Third, Fourth, and Sixth Circuits).

The Supreme Judicial Court has previously considered and rejected the plaintiff's argument that in addressing a motion for summary judgment in a discrimination case courts should proceed directly to the third stage of the McDonnell Douglas paradigm. Sullivan, 444 Mass. at 46 n.17 ("We proceed with the McDonnell Douglas analysis because it remains 'a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination' "), quoting from Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978).

The plaintiff's belated explanations have no bearing on what the chief believed when he made his decision to place the plaintiff on paid administrative leave and (following Fitzsimmons's investigation, the just cause hearing, and negotiation with the plaintiff's counsel) to suspend the plaintiff. As such, the plaintiff cannot rely on these explanations to show pretext. Sullivan, 444 Mass. at 56 (explaining that "our task is not to evaluate the soundness of [the defendant's] decision making, but to ensure it does not mask discriminatory animus").

The plaintiff's argument that the issue whether comparators are similarly situated is always a question for the jury is belied by the case law. See, e.g., Matthews, 426 Mass. at 130-133.